IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 29, 2001 Session

## LONNIE H. WILDER v. LESLIE PERKINS WILDER

**Direct Appeal from the Chancery Court for Claiborne County**
**No. 12,615     Hon. John McAfee, Judge**

**FILED SEPTEMBER 24, 2001**

**No. E2000-03184-COA-R3-CV**

In this divorce case, the Trial Court awarded husband attorney's fees against wife. On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Cecilia S. Petersen, Knoxville, Tennessee, for Appellant, Leslie Perkins Wilder.

Johnny V. Dunaway, LaFollette, Tennessee, for Appellee, Lonnie H. Wilder.

**OPINION**

In this divorce action, the sole issue on appeal is whether the Trial Judge abused his discretion in ordering the wife to pay $18,000.00 of the husband's attorney's fees.

The parties were married in 1989, and one child was born in June of 1995. The husband is a safety inspection supervisor for a coal mining company, earning approximately $65,000.00 a year. The wife is an elementary school teacher, earning approximately $32,000.00 a year. During the marriage, the parties acquired a home which has an equity of approximately $36,000.00, various items of personalty, and retirement accounts of $30,000.00 for the husband and the wife's retirement of approximately $8,000.00.

The wife became sexually involved with a local school official in December, 1995,

and the husband first became suspicious of the wife in June of 1999. In August 1999, he confronted her with his suspicions of her infidelity, which she initially denied. He then hired a private investigator, and in September of 1999 filed a divorce complaint. On September 14, 1999, a hearing was held for a Temporary Restraining Order, where the wife denied extra-marital affairs, with custody of the child remaining with the husband. In the ensuing months, the parties had great difficulty cooperating as to the wife's visitation.

On February 1, 2000, a lengthy hearing was held to grant the divorce. The wife's counsel attempted to stipulate that husband was entitled to a divorce on the grounds of adultery, but husband's counsel insisted on a full hearing on fault. At the conclusion, a divorce was granted to the husband on the grounds of adultery, temporary custody remained with husband, and the wife was ordered to pay temporary child support.

The Court also granted a Rule 35 Motion for a psychiatric examination of the wife, based upon her statement about committing suicide when the parties first separated, but stressed more significantly, her more serious problem with "love addiction". In ordering the examination, the Court felt that "something must be wrong with her" and that she had a "deep-seated problem that has to be dealt with" because of her multiple affairs. The Judge commented that "her behavior doesn't seem natural . . . because of its pattern and consistency over five years".

At another hearing on November 16, 2000, the parties announced that all issues regarding permanent custody, child support, and property division had been settled. The terms of the settlement distributed $71,292.00 of the marital assets to husband, and $35,700.00 in marital assets to wife. Each party was to receive $18,000.00 in the equity in the marital residence, with the husband retaining possession. The parties further agreed that time would be shared equally with the child, and that neither party would pay the other child support.

The income and expense statements filed show that the husband had a gross income of $5,400.00 per month and expenses of $2,770.00, for a net income of $2,630.00 per month. The wife earns approximately $1,800.00 per month and has expenses of $2,200.00 per month. At that hearing, the Court heard testimony on the remaining issue of attorney's fees. Wife had incurred $18,000.00 in attorney's fees and $2,000.00 for the Rule 35 psychiatric examination. The Court found that although her fees and expenses were reasonable, she was not entitled to an award due to her misconduct. The husband testified that he had incurred $39,360.00 in attorney's fees, $7,870.00 for the investigators fees, and $2,450.00 for court reporting fees. No billing statements were submitted in support of the husband's attorney's fees. The Court took judicial notice that the husband's counsel charged $300.00 per hour,[1] which is not the traditional, reasonable rate for that locality. The husband was then awarded $18,000.00 which "would include the investigator's fees,

---

[1]The Court commented that he was familiar with the husband's counsel and had practiced extensively with him. He noted that when he (the Judge) was practicing he could not get $300.00 per hour.

that would include the attorney's fees, whatever is outstanding, or anything." The award could then be set off against the wife's equity in the marital home.

The Court gave its reasons for this ruling, stating that the proceedings were created because of the wife's adultery, opining that had the divorce been filed on no-fault grounds, clearly each spouse would pay its own attorney's fees. He said that the husband was entitled to this fee because "this was all being motivated because of his ex-wife's behavior in this case." The Judge went on to comment that "after taking into consideration the fault in this case, taking into consideration - and I'm also looking at Mr. Wilder coming in here and basically agreeing to settle this case. It's clear from the evidentiary hearings that we've had that Mr. Wilder, at least to this point, held to high ground . . .".

An award of attorney's fees in divorce cases is treated as a form of spousal support, and the award is characterized as alimony *in solido*. *Sannella v. Sannella,* 993 S.W.2d 73, 76; *Smith v. Smith*, 984 S.W.2d 606 (Tenn. Ct. App. 1997); and *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1988); *Gilliam v. Gilliam,* 776 S.W.2d 86 (Tenn. Ct. App. 1988).

The Trial Court has wide discretion to award attorney's fees. Upon review, this Court will not interfere with an award, except upon a showing of abuse of discretion, where the evidence preponderates against the award, and a manifest injustice will be done if the Trial Court's decision is allowed to stand. *Long v. Long*, 957 S.W.2d 825 (Tenn. Ct. App. 1997); *Kincaid v. Kincaid*, 912 S.W.2d 144 (Tenn. Ct. App. 1995); *Elliot v. Elliot*, 825 S.W.2d 92, (Tenn. Ct. App. 1991); and *Butler v. Butler*, 680 S.W.2d, 470 (Tenn. Ct. App. 1984).

Spousal support decisions require a "careful balancing" of the factors set forth in Tenn. Code Ann. §36-5-101(d)(1). *Anderton,* 683. Of those factors, the Courts have held that the most important are real need of the disadvantaged spouse, a demonstrated financial inability to obtain counsel, and the ability of the obligor spouse to pay. *Cranford v. Cranford*, 772 S.W.2d 50 (Tenn. Ct. App. 1989). If a party has adequate property and income from which to pay their own expenses, and after consideration of all relevant factors, it may not be appropriate to award attorney's fees. *Umstot v. Umstot*, 968 S.W.2d 124 (Tenn. Ct. App. 1997); *Houghland v. Houghland*, 844 S.W.2d 623 (Tenn. Ct. App. 1992); *Duncan v. Duncan*, 686 S.W.2d 573 (Tenn. Ct. App. 1984).

In this case, the Trial Judge did not engage in the analysis and balancing of the statutory factors in making the award, never addressing the issue of the husband's need and the wife's ability to pay. While the Judge did state that he considered "the totality of the circumstances", he nonetheless focuses singularly upon the wife's behavior and fault in committing adultery. The record is devoid of any indication that the Judge considered the husband's financial need or the wife's ability to pay, which are the two cornerstones of the balancing test. *Gilliam* at 86. The husband did not carry the burden of showing that he could not afford to retain counsel. Moreover, the Court's award increased the disparity of the property settlement to approximately 90/20 distribution in the husband's favor.

It is well settled that while fault is a factor to be considered, it must not be applied in a punitive manner against a guilty party in determining the award of alimony. *Gilliam*, at 81; *Fisher v. Fisher*, 648 S.W.2d 246 (Tenn. 1983). In *Duncan*, 571-572, this Court specifically rejected the notion of "punitive alimony", noting that while alimony may be reduced due to a spouse's misconduct, unneeded alimony may not be added to punish a guilty spouse. *Id.* We have stated "alimony is not and never has been intended by our legislature to be punitive. (Citations omitted). Nor do we believe it was intended simply as an award for virtue." *Lancaster v. Lancaster*, 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984). The punitive nature of this ruling is further demonstrated by setting the award at $18,000.00 to the husband, the exact amount of the wife's equity in the house. This amount has no rational relationship to the husband's fees and expenses, and represents the single most valuable asset received by the wife. Further evidence of the Court's intent to punish the wife is demonstrated by requiring her to undergo a psychiatric evaluation for conduct that "doesn't seem natural" to the Judge. The exam was ordered, despite overwhelming testimony that the wife was a good mother to the child, and the Court disregarded the holding of *Varley v. Varley,* 934 S.W.2d 639, 667 (Tenn. Ct. App. 1996), and *Mimms v. Mimms*, 780 S.W.2d 739 (Tenn. Ct. App. 1989), which held that sexual infidelity is relevant in a child custody determination, only as it relates to the matter of neglect of the child and affecting the child's best interest. The wife was required to undergo the expense of an evaluation, despite the Court's acknowledgment the child was in no danger, there was no concern for the safety of the child in the mother's presence, and the testimony of all witnesses, including the husband, that the wife was a good and attentive mother.

The husband advances the "clean hands" doctrine to support the award, which we find to be without merit.[2] The evidence preponderates that the award of attorney's fees to the husband against the wife was based upon fault, and in making the award the Court abused its discretion under the statute. The husband is in a significantly better financial situation than the wife and has the ability to pay attorney's fees. To punish the wife by depriving her of the single most valuable marital asset would only serve to impoverish her and adversely affect her ability to provide for the child.

Accordingly, we reverse the Judgment of the Trial Court and remand, with the cost of the appeal assessed to the appellee, Lonnie H. Wilder.

_____
HERSCHEL PICKENS FRANKS, J.

---

[2] Counsel cites wife's perjury which occurred early in the case but the impact on the ultimate issue was minimal. While the wife's perjury is a serious matter, generally speaking, the doctrine of "clean hands" is not applicable in determining whether to award attorney's fees.