IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 20, 2002 Session

## MARILYN ANN YOUNT v. BRUCE WAYNE YOUNT

**Appeal from the Chancery Court for Montgomery County**
**No. 91-67-205     Carol Catalano, Chancellor**

---

**No. M2001-01335-COA-R3-CV - Filed May 16, 2002**

---

The trial court granted a divorce to the wife, and awarded her alimony in futuro of $2,000 per month. The husband argues on appeal that the wife does not need any alimony, and that he himself does not have the ability to pay the alimony. The proof shows that he does indeed have the ability to pay, but that the wife's needs are more appropriately served by an award of rehabilitative alimony. We modify the alimony award accordingly.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and JOHN BROWN HAGLER, SP. J., joined.

Michael S. Bligh, Nashville, Tennessee, for the appellant, Bruce Wayne Yount.

Frank J. Runyon, II and Raymond F. Runyon, Clarksville, Tennessee, for the appellee, Marilyn Ann Yount.

### OPINION

### I. A MARRIAGE OF LONG DURATION

Marilyn Ann and Bruce Wayne Yount married in 1973, and separated in 1991. Their marriage produced two children, who reached their majority during the proceedings under discussion. Several years before the parties' separation, Mr. Yount began systematically transferring title to his businesses and other marital assets to his mother, allegedly to put them beyond the reach of his wife, but probably also to shield them from his creditors.

Ms. Yount filed a complaint for divorce in 1991, the same year the parties separated. She cited adultery and cruel and inhuman treatment as grounds. The husband did not file his answer until the year 2000. The final decree of divorce was filed in 2001. The lengthy interval between the

complaint and final decree can be accounted for, at least in part, by the husband's stubborn resistance to the pendente lite orders of the trial court, including orders for child support, and the wife's efforts to make him comply.

While we do not wish to recite every detail of the prolonged legal struggle between the parties, later on in this opinion we will discuss some of the proceedings relating to the wife's efforts to get her husband to fulfill his legal obligations. An understanding of the couple's financial and employment history is also vital to a just resolution of the question of alimony, which is the only issue on appeal.

## II. FINANCIAL SUCCESS AND MARITAL DISTRESS

Mr. and Ms. Yount were both attending the University of Tennessee at Martin when they married. After graduation, Mr. Yount took a job as a chemical engineer in Jackson, Tennessee, where both their children were born. Ms. Yount was trained to be a schoolteacher, but she did not take a teaching job right away, in part because Mr. Yount preferred that she stay home and take care of the children.

Mr. Yount changed jobs several times, with each new job bringing both an increase in salary and a change of residence. After leaving Tennessee, the parties lived in Texas, Kansas, and Alabama. Ms. Yount testified that the parties had owned a spacious house in Wichita, Kansas and enjoyed a very comfortable standard of living. The record shows that in 1983, Mr. Yount was earning a salary of $42,500 per year working for the Clow Corporation in Alabama. He was also receiving a modest pension from the military, stemming from an injury he received while serving in the Navy between 1967 and 1971.

In 1983, the parties returned to Tennessee to be closer to both their families. Although he had a successful career as an engineer, Mr. Yount decided he wanted to run his own business instead of working for others. His brother had experience in the transmission repair business, and Mr. Yount applied for a loan from the Small Business Administration so he could purchase a Mr. Transmission franchise in Clarksville. Mr. Yount's mother, Alice Elizabeth Yount, also submitted a loan application for the same purpose. Mr. Yount had earlier chartered a corporation known as Yount Enterprises. The application showed Yount Enterprises to be 60% owned by Mr. Yount, and 40% by his mother.

Ms. Yount supported her husband's decision to go into business for himself. During the first few years, she helped out on a regular basis, picking up parts and running errands as needed. Alice Elizabeth Yount did not participate in running the business, but Mr. Yount's brother Allen served as the shop manager. Mr. Yount later opened a second transmission shop in Hopkinsville, and a third in Nashville. At some point, he decided he didn't like paying franchise fees, and he re-opened one or more of the businesses under the name Transmission Physician. Mr. Yount also opened snack shops in three shopping malls. These enterprises must have been at least somewhat successful, for

Mr. Yount was able to buy a $40,000 Porsche, take flying lessons, and take his family on a $5,000 Royal Caribbean cruise.

Despite this economic progress, however, all was not well with the marriage. Ms. Yount claimed that her husband had a violent temper, and that he struck her on at least one occasion. She also testified that he had indulged in at least one adulterous affair during the marriage, and that he gave her a venereal disease. Mr. Yount admitted at trial that he struck his wife, and stated that he didn't regret doing it. He also admitted to two affairs, and to having been arrested for solicitation of prostitution. When asked about his wife's testimony that he infected her with a sexually-transmitted disease, he answered, "that's news to me. If I did, I'm not aware of it."

### III. AFTER SEPARATION

Ms. Yount filed her complaint for absolute divorce on April 26, 1991, asking for custody of the children, child support, alimony, and attorney fees. After a hearing, the court ordered Mr. Yount to pay his wife $1,000 per month in pendente lite support. Ms. Yount claimed that her husband never made any payments pursuant to the order, and that he stopped making mortgage payments on the marital home, resulting in eventual foreclosure on the home, and the eviction of Ms. Yount and the children. In his pre-trial statement, Mr. Yount claimed that Ms. Yount had been receiving support in the amount of $1,000 per month, but that she never made a house payment. We're not sure what to make of Mr. Yount's statement, for there is no documentation in the record to indicate any such payments made by him.

On May 28, 1992, Ms. Yount filed a petition to add Alice Elizabeth Yount as a party-defendant, alleging a conspiracy between mother and son to conceal her husband's assets. The mother denied the existence of any such conspiracy, and after a hearing on October 13, 1992, the trial court ordered that all claims against Mr. Yount's mother be bifurcated from the main divorce trial.

Meanwhile, the arrearage on Mr. Yount's pendente lite support continued to accumulate, and he took no action whatsoever to produce financial records requested by Ms. Yount and ordered by the court. The record contains three petitions for contempt filed by Ms. Yount in the Montgomery County courts, each one asking for the payment of support and/or production of previously ordered financial records. The court twice found Mr. Yount in contempt, and imposed jail time, but stayed both sentences pending compliance with the court's orders, which was not forthcoming.

Finally, on May 5, 1994, the court filed an order that allowed Ms. Yount to enforce its orders through the District Attorney's office in Davidson County, where Mr. Yount was residing at the time. Mr. Yount appeared before Judge Muriel Robinson of the Davidson County Circuit Court, who told him she would enforce the contempt by immediate incarceration, if he did not pay what he owed. Mr. Yount's mother promptly wrote a $27,000 check for the arrearage, and Mr. Yount was spared from any jail time.

On May 8, 1997, Mr. Yount filed a petition for Chapter 7 bankruptcy. His petition stated that he owned no real property, had no possessory interest in any business, and that he only owned $250 worth of personal property in the form of necessary wearing apparel. His listed debts were $20,000 for unpaid child support, and non-priority debts to various creditors (including judgment creditors) totaling $48,597. The only income he reported was $550 per month in military retirement. Although alimony and child support payments are non-dischargeable under Chapter 7, Mr. Yount apparently received a full discharge of the other debts.

## IV. THE FINAL HEARING

The final hearing on the divorce complaint was conducted on November 30, 2000. The only two witnesses to testify were the parties. Aside from her testimony as to her husband's conduct, Ms. Yount testified that she had returned to school in 1987 to regain certification as a teacher. Some time after the parties separated, she took a job as an elementary school teacher in Montgomery County. Her statement of income and expenses shows net take home pay from her job of $2,044 monthly. Since she lost her home, she has been living in a house trailer, upon which she is paying rent of $425 per month. By budgeting her money, she was almost able to pay all her other expenses, coming up about $215 short each month.

Mr. Yount testified that the stress of operating six businesses had convinced him of the need to cut back, and he had closed all but one of them. He claimed that although he was still the manager of Transmission Physician in Nashville, his only income was his military disability pay of $550 per month, and that he derived no income at all from the business, because it paid its bills, with nothing left over. Among the bills were monthly lease payments on the piece of real estate where the business is situated. The property is owned by Mr. Yount's mother, and the lease payments go towards her monthly mortgage payments of $1,576.

Despite his supposedly limited income, Mr. Yount manages to live remarkably well. According to his own testimony, he resides in a rental unit owned by his mother. His girlfriend, who lives there with him, pays the rent. He does not own a car, but he drives a 1992 Cadillac that is owned by a friend. This friend pays for the automobile insurance, while Mr. Yount pays for the gas and oil. Mr. Yount also flies an airplane for pleasure once or twice a month. The aircraft was purchased five years earlier by Alice Elizabeth Yount for $38,000 at the urging of her son. Mr. Yount's mother does not fly, but she is the sole shareholder of a Delaware Corporation formed for the sole purpose of ownership of the aircraft, a company aptly named "Guess Who, Incorporated."

At the conclusion of the proof, the trial court granted the wife a divorce on the grounds of inappropriate marital conduct and adultery, and allowed each party to keep the marital property in that party's possession. In the final decree of divorce, filed on May 11, 2001, the court noted Mr. Yount's 1983 salary of $42,500, and found that he was still capable of earning that amount. Adding in his military disability pay (and there was no evidence that his disability prevented Mr. Yount from working), the court concluded that Mr. Yount could readily produce an annual income of $49,100. Since he had no major expenses, and since the court also concluded that Ms. Yount was in need of

alimony, it awarded her alimony in futuro, as well as her attorney fees. The court ordered that alimony of $2,000 a month commence on December 1, 2000, with payment to be made for that date, and on the first day of each month thereafter. This appeal followed.

## V. REHABILITATIVE AND IN FUTURO ALIMONY

We must note at the outset that our Legislature has explicitly declared its intent that when alimony is granted to "a spouse who is economically disadvantaged relative to the other spouse," temporary rehabilitative alimony is to be preferred over alimony in futuro. Tenn. Code Ann. § 36-5-101(d). The reason is the desirability of eliminating the dependency of one ex-spouse upon the other. *Self v. Self*, 861 S.W.2d 360 (Tenn. 1993). The statute authorizes the courts to order payment of support on a long-term basis only when the economic rehabilitation of the obligee spouse is not feasible. When determining the nature and amount of support to order, the courts are directed to consider the relevant factors, set out in the statute as follows:

> (A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (C) The duration of the marriage;
> (D) The age and mental condition of each party;
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (G) The separate assets of each party, both real and personal, tangible and intangible;
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;
> (I) The standard of living of the parties established during the marriage;
> (J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

It appears to us that insofar as Ms. Yount is employed and paying her bills, she has already rehabilitated herself to a great extent, and thus that she is not in need of alimony in futuro. However, in light of many of the factors listed above (especially (C), (H), (I), (J) and (K)), we believe she is entitled to a reasonable amount of rehabilitative alimony.

There can be no doubt that Ms. Yount still needs help with housing. Despite a marriage of 27 years, to which she made a substantial contribution, Ms. Yount was evicted from the marital home because of the callous indifference of her husband to her needs, and those of their children. Even though the parties owned several homes during the course of their marriage, Ms. Yount can only afford to live in a rented trailer. It thus appears equitable to us to require her former husband to pay her rehabilitative support, so she can save enough to purchase and maintain a home of her own.

Mr. Yount argues that his wife should not have been awarded any alimony at all, and that he is not capable of paying. His theory is that it was unreasonable for the court to use 1983 income as a basis for his estimating his current earning capacity, but to use his disability check alone, or to impute a modest amount of additional earning capacity to him as the result of the goods and services provided for his use by others without charge. Since on paper his wife's income is greater than his, he contends that she cannot be considered to be at an economic disadvantage relative to him, and thus that she does not meet the threshold requirement of Tenn. Code Ann. § 36-5-101(d).

The statute does not speak of earnings, however, but of earning capacity. While the use of income information from so remote a time does not form the most accurate basis for calculating an individual's current earning capacity, Mr. Yount failed to provide the court with more current information about his financial affairs prior to his decision to close down five businesses and to work for his mother's financial benefit rather than his own. In any case, because of his management experience, engineering background and financial resourcefulness, there can be no doubt that he is capable of earning more than he is currently reporting.

Mr. Yount's attorney suggests that if Ms. Yount wishes to improve her standard of living, she should take advantage of the free time that schoolteachers enjoy to take a summer job. We think that it is Mr. Yount that needs to make better use of his time. If he needs additional income, he should take a job that generates more money than managing Transmission Physician does (even if it is more stressful to him and less remunerative to his mother). Since he has almost no expenses and no creditors, almost all the additional money he earns can go towards meeting his legal obligations.

In consideration of all the relevant statutory factors, we modify the alimony ordered by the trial court by changing it to rehabilitative alimony. We order it to run for an additional five years, starting with the first check that is due after the date of the filing of this opinion. In view of the wife's ability to meet most of her needs through her own efforts, we prospectively reduce the alimony obligation from $2,000 per month to $1,500.

As for the question of attorney fees, an award of such fees in a divorce case is considered to be a part of the alimony awarded. *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992). As such, in determining whether to award attorney fees, the trial court should consider all the relevant statutory factors, including the relative fault of the parties. *Lindsey v. Lindsey*, 976 S.W.2d 175 (Tenn. Ct. App. 1997). It is considered most appropriate where the final decree of divorce does not provide the obligee spouse with a source of funds, such as from property division or alimony in solido, with which to pay his or her attorney. *Houghland v. Houghland*, 844 S.W.2d 619 (Tenn. Ct. App. 1992). An award of attorney fees is considered to be within the sound discretion of the trial court, and will not be reversed on appeal if that discretion is not abused. *Garfinkel v. Garfinkel*, 945 S.W.2d 744 (Tenn. Ct. App. 1996).

In the present case, there was no award of alimony in solido, and Mr. Yount disposed of most of the marital property prior to the divorce. While it appears that Ms. Yount would not find it easy to pay her attorney, Mr. Yount has demonstrated that he has the ability to produce considerable sums of money when he is sufficiently motivated. We do not believe the trial court abused its discretion by ordering Mr. Yount to pay his wife's attorney fees.

## VI.

The alimony ordered by the trial court is modified from alimony in futuro to rehabilitative alimony, to be paid over an additional period of five years, and it is reduced, starting with the first alimony check due after the filing of this opinion, from $2,000 per month to $1,500 per month. Remand this cause to the Chancery Court of Montgomery County for further proceedings consistent with this opinion. Tax the costs on appeal equally between the appellant and the appellee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.