IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2003 Session

## ALAN REECE CUNNINGHAM v. SYLVIA DELAIN CUNNINGHAM

**Appeal from the General Sessions Court for Putnam County**
**No. 169D01      Nolan R. Goolsby, Judge**

---

**No. M2002-01659-COA-R3-CV - Filed December 22, 2003**

---

The case involves the dissolution of a marriage of seven years. The trial court granted the divorce to the wife, divided the marital property between the parties in roughly equal proportions, found that the wife was not economically disadvantaged, and declined to award her any form of alimony. The wife appeals the court's alimony decision. We find the wife is entitled to alimony because, contrary to the trial court's finding, we believe the evidence shows that she is economically disadvantaged when compared to her former spouse. We modify the judgment to award her alimony *in solido*.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court**
**Affirmed as Modified and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM B. CAIN, J., joined.

Rankin P. Bennett, Cookeville, Tennessee, for the Sylvia Delain Cunningham.

Henry D. Fincher, Cookeville, Tennessee, for the appellee, Alan Reece Cunningham.

**OPINION**

**I. Marriage and Divorce**

Alan Reece Cunningham and Sylvia Holman first met at the Lowe's store in Cookeville where Mr. Cunningham was employed. At the time, Ms. Holman was taking courses in Computer-Aided Design (CAD) at Tennessee Tech, and working as an intern with a contractor that did business with Lowe's. She was also working part-time. The parties married on May 26, 1995. This was the second marriage for the husband, and the third for the wife. At the time of the divorce, Mr. Cunningham was 42 years old, and Ms. Cunningham was 41.

The parties testified that the first year or so of their marriage was good. They built a home on land that Reece Cunningham's father had given him, with Sylvia Cunningham doing much of the

design work, as well as helping with some of the carpentry and painting. Ms. Cunningham quit her job at an architectural firm, and started her own home-based CAD business. The couple built and sold two "spec" houses for modest profits and also renovated a house to use as rental property.

The relationship between the parties and the marriage deteriorated after the first year of marriage due in large part to health problems suffered by Ms. Cunningham and the effect her condition had on her. Ms. Cunningham's pre-existing neck and back problems painfully flared up, she was diagnosed with degenerative disc disease, and she underwent at least three spinal surgeries. The result was constant pain, a debilitating reliance on pain medication, and an inability to perform many everyday tasks. On September 30, 1997, the Social Security Administration ruled that Ms. Cunningham was totally disabled, and began sending her a monthly check (which amounted to $584 at the time of trial).

Meanwhile, Reece Cunningham had been able to transfer to a sales job in the Contractors Yard at Lowe's, and began earning a substantial annual income from commission-based compensation. He also did his own contracting on the side.

Not surprisingly, Sylvia Cunningham's physical problems created great strains for the marriage. Her inability to perform normal chores and activities separated the couple from other people and from each other. They stopped many activities they used to enjoy with others and withdrew from social interaction. Several witnesses testified that both parties, previously outgoing and friendly, had become withdrawn and depressed. Many stresses developed between the two of them as their daily lives together deteriorated, and they became more isolated from each other even when home together. Mr. Cunningham left the marital home in mid-August of 2001.

On October 4, 2001, Mr. Cunningham filed a Complaint for Divorce in the General Sessions Court for Putnam County. The grounds were irreconcilable differences under Tenn. Code Ann. § 36-4-101(14), or in the alternative, inappropriate marital conduct under Tenn. Code Ann. § 35-4-101(11). He asked the court to make an equitable division of the marital property and debt, in the event the parties were unable to reach agreement on their own.

Ms. Cunningham filed her Answer and Counter-Complaint for Divorce on October 12, 2001. She asserted the same statutory grounds for divorce as did Mr. Cunningham. In addition to a division of marital property, she asked the trial court to award her temporary and permanent support, including alimony *in solido* and alimony *in futuro*. She also asked for reasonable attorney fees, discretionary costs, and court costs.[1]

---

[1]The court conducted a hearing on Sylvia Cunningham's request for temporary support. The judge noted the wife's limited income, and ordered the husband to continue to pay the mortgage notes and utilities on the marital home and the note on the wife's auto. He also ordered payment to the wife of up to $100 per month for gasoline and car-related expenses, as well as payment of her medical expenses not covered by insurance, payments on various credit cards, and payment of $35 every two weeks for housekeeping expenses.

The final hearing on the divorce was conducted on May 15, 2002. In addition to the parties themselves, thirteen other witnesses testified. In its final order, the trial court made extensive findings of fact, which are afforded a presumption of correctness, unless the evidence preponderates against them. Tenn. R. App. 13(d). Much of the testimony at trial focused on the relative fault of each party for the breakup of the marriage. In particular, Ms. Cunningham spent time at trial and money for investigators on the relationship between Mr. Cunningham and another woman, Ms. Madewell. The trial court granted the divorce to Ms. Cunningham, and explained his reasons as follows:

> The Court finds that both parties are guilty of inappropriate marital conduct towards the other during the marriage. The proof shows that by August 2001 that neither party was completely satisfied with their marriage and that there was little hope for reconciling the existing problems. The defendant has attempted to prove that there was an improper romantic relationship existing between the plaintiff and Ms. Madewell before the date of physical separation. This allegation has not been proven. However, there is an abundance of evidence that the plaintiff and Ms. Madewell became romantically involved shortly after the Plaintiff separated from his wife. Such relationship constitutes the grounds of cruel and inhuman treatment or conduct towards the Defendant as renders cohabitation unsafe and improper pursuant to Tennessee Code Annotated Section 36-4-101(12).

> The Court also finds by a preponderance of the evidence in balancing the relative fault between the parties that the fault of the Defendant is less than the fault of the Plaintiff. Therefore, the Court hereby grants a divorce to the Defendant as provided by Tennessee Code Annotated Section 36-4-129.

The trial court recounted much of the testimony on the issues surrounding the breakdown of the marriage, including Ms. Cunningham's health problems and the impact those problems had on the couple, as well as the proof surrounding the husband's relationship with Ms. Madewell. In addition, the court made a number of specific findings of fact supporting its ultimate conclusion. Neither party contests the award of the divorce to Ms. Cunningham, and neither contests the court's findings supporting its conclusion. Thus, we are not called upon to review this holding and its underpinnings. Fault is only relevant herein to the extent it is a factor to be considered in determining a request for spousal support.

## II. Division of Marital Property

The testimony as to the parties' property and their finances was relatively straightforward. The trial court first awarded each party his or her separate property and then proceeded to identify, value, and distribute the marital property, relying to large extent on the parties' identification and

valuation of the property.[2] Once again, the trial court made extensive and specific findings of fact regarding the division of marital property, including the following:

The Court finds that neither party had any substantial estate before their marriage. The parties have accumulated significant assets during the marriage but have likewise accumulated a large amount of debt. The proof shows that the Defendant began to experience medical problems related to her back and neck within the first year of the marriage. The proof also shows that she contributed very little income to the family needs during the first two and one-half years of the marriage. This was due first to her being a full-time student in vocational school at the beginning of the marriage and then due to her subsequent medical problems. . . .

The parties have acquired some residential rental property during the marriage but the exhibited tax returns do not reflect significant net income. The Court further finds from the evidence that the Plaintiff through his employment with Lowe's has basically been the primary provider of all the financial resources to meet the needs of the parties during the marriage. The Defendant however kept the family checkbook and was in charge of managing the family budget but she would often overdraw the bank account.

The parties' present marital home was also built during the marriage. The land came to the parties by gift from the Plaintiff's parents. The Plaintiff acted as general contractor and the Defendant designed the house plans. Both parties performed much of the physical labor needed to build their home and the Cherry Creek Road spec house.

****

Based upon the above findings, the Court finds that the marital estate totals the sum of $631,214.25. A fair and equitable division of marital property awards unto the Plaintiff [Mr. Cunningham] the sum of $382,846.11 made up of the marital home valued at $242,500.00; personal property valued at $26,610.00; the State Farm Insurance policy valued at $700.00; plus one-half of the Lowe's retirement accounts totaling $113,036.11. The Plaintiff is ordered to pay marital debts totaling $245,461.23. Thus, the division of property being awarded to the Plaintiff is the sum of $137,378.88 which amounts to approximately 48% of the net marital estate.

The Court finds that a fair and equitable division of the marital estate to be awarded to the Defendant [Ms. Cunningham] is the sum of $248,368.14 consisting of the house located on Chitwood Drive valued at $85,000.00; rental income bank

_____

[2]Neither party challenges the trial court's identification of any piece of property as marital or the court's valuation of property.

-4-

account of $622.32; personal property valued at $30,346.85; one-half of the Lowe's retirement accounts valued at $113,036.11; Paine Webber Account valued at 21,189.11; and the E-Trade account valued at $5,517.60. The Defendant is ordered to pay marital debts totaling $101,859.93. Thus, the division of property being awarded unto the Defendant is the sum of $146,508.21 which amounts to approximately 52% of the net marital estate.

The Court finds the distribution of the marital estate set forth herein is justified as fair and equitable based upon the facts that the Plaintiff [Mr. Cunningham] is in good health and has secure employment. He chose to work for free in the construction of the Madewell job[3] and has elected not to do any other construction jobs on the side while this case has been pending. Although he has substantial marital debt to pay, he has the future earning capacity to pay the debts and is in a better position to possibly refinance the indebtedness.

The Court also finds the distribution of the marital estate is fair and equitable for the Defendant [Ms. Cunningham] because there is sufficient cash in the Paine Webber account that passes to her that is available to pay her portion of the marital debts including her attorney fees loans. The only remaining debts include the Chitwood Drive house and Tahoe debts. She is under doctor's orders not to drive an automobile. Therefore, if she sells the Tahoe she could receive about $8,000 profit according to the proof. This profit when added to the balance of the E-Trade account and her portion of the anticipated IRS refund leaves her with more than $15,000.00 cash on hand.

As this summary makes clear, the major assets were: the husband's retirement account, which the court divided equally; the marital home valued at $242,500 with a mortgage balance of approximately $204,900, leaving equity of $37,600, which was awarded to the husband; the rental house valued at $85,000, with mortgage balance of approximately $71,300, leaving equity of $13,700, which was awarded to the wife; and various stock accounts totaling approximately $26,700, which were awarded to the wife. In addition to the mortgage debt on the marital home, Mr. Cunningham was assigned marital debt totaling approximately $40,600. Ms. Cunningham was assigned the debt on the car, a Tahoe, she was awarded, $5,000 in student loan and credit card debts, and $14,350 representing a loan for divorce expenses.

---

[3]Sometime in 2001 Ms. Madewell hired Mr. Cunningham and his partner, Jasper Pippin, to install a roof, shingles, brick, and siding on a new house she and her husband were building. The work was completed by September 10, 2001, and Mr. Pippin was paid $4,376 for his labor. Mr. Cunningham took no payment for his services. After Ms. Madewell was deposed in this case, he billed her $5 for his work, which she paid. In its Final Order, the trial court declared that Mr. Cunningham had contributed to his own financial hardship by giving away his right to be compensated for the Madewell job, and thus that an equivalent sum of $4,376 had to be considered as a marital asset in the distribution of the marital property.

On appeal, neither party directly challenges the distribution of marital property. They differ, however, on the effect that distribution should have on the question of spousal support. The wife argues that the distribution was fair, but that it should not be used as a basis for denial of alimony because she was awarded little in liquid assets needed for living expenses.[4] The husband asserts the property distribution, coupled with the assignment of debt, left the parties in equally bad economic situations and that Ms. Cunningham received the only liquid assets.

The parties are correct that the court's award of property, marital and separate, is a factor to be considered in a decision on spousal support. Tenn. Code Ann. § 36- 5-101(d)(1)(G) and (H).[5] Additionally, an award of marital property can be used, as can spousal support, to help alleviate the financial impact of divorce. Our Supreme Court has explained the relationship between spousal support and the distribution of marital property:

> All relevant factors, including those set out in § 36-5-101(d)(1), must be considered on a case-by-case basis to determine the nature and extent of support. Tenn. Code Ann. § 36-5-101(d)(1). Factor (H) requires the trial court to consider the division of marital property when awarding alimony. Tenn. Code Ann. § 36-5-101(d)(1)(H). The division of marital property involves the distribution of both marital assets and marital debts. *See Anderton v. Anderton*, 988 S.W.2d 675, 679 (Tenn. Ct. App. 1998); *Mondelli v. Howard*, 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989). We encourage trial courts to use the division of marital property to assist in meeting the disadvantaged spouse's financial needs when feasible. *See Crabtree*, 16 S.W.3d at 361 n.4 ("In cases in which there is a disparity between the relative earning capacities of the parties, a trial court also may consider adjusting the award of marital assets to assist the disadvantaged spouse."); *see also Renfro v. Renfro*, 848 P.2d 830, 834 (Alaska 1993) (establishing a preference for meeting the parties' needs with the division of marital property, rather than with alimony). Section 36-4-121 of the Tennessee Code Annotated does not require an equal division of marital property but an equitable division. Tenn. Code Ann. § 36-4-121(a)(1); *see Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988). When practical, therefore, a trial court should consider awarding more assets to an economically disadvantaged spouse to provide future support, rather than relying solely upon an award of alimony. When there are few marital assets but a considerable amount of marital debt, a trial court should similarly consider awarding a disadvantaged spouse a lesser amount of marital debt. Careful distribution of the marital property may assist the disadvantaged spouse in

---

[4]Evidence at trial showed the money in the retirement accounts was not available, without substantial penalties for withdrawal, until Mr. Cunningham reached the age of 59 1/2 years old.

[5]In 2003, the General Assembly made a number of changes to the statutes on spousal support. 2003 Tenn. Pub. Acts, ch. 361. Those substantive changes apply to cases in which the trial court's judgment had not become final by June 17, 2003, and obviously do not apply to the case before us. Those changes also resulted in some renumbering of the statutory sections. For convenience and to avoid confusion, we will use throughout this opinion the numbering system in effect before the 2003 amendments.

achieving rehabilitation in furtherance of the legislative policy of eliminating spousal dependency.

*Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002).

Based upon the language of the trial court herein, it appears to us that the court used its discretion in dividing the property to give Ms. Cunningham more property than that to which she might otherwise have been entitled specifically for the purpose of improving her financial situation. We reach this conclusion in part because of the court's findings regarding the short duration of this marriage and the parties' relative contributions to the marital property. In equitably distributing marital property, courts are guided by a number of factors, including the duration of the marriage, the estate of each party at the time of the marriage, and the contributions of each spouse to the acquisition, preservation, appreciation or dissipation of the marital or separate property. Tenn. Code Ann. § 36-4-121(c). The court is specifically authorized to weigh "such other factors as are necessary to consider the equities between the parties." Tenn. Code Ann. § 36-4-121(c)(11).

Based upon these factors, our courts have established the principle that in marriages of short duration, "it is appropriate to divide the property in a way that, as nearly as possible, places the parties in the same position they would have been in had the marriage never taken place." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). In such marriages, an important factor to consider is each spouse's contribution to the accumulation of assets during the marriage. *Id*. Herein, although the trial court found that the wife had made little contribution to the parties' marital estate in this marriage of short duration, it nonetheless awarded her the greater share of the property in recognition of her relative inability to generate income. The trial court's findings on the issue of alimony further demonstrate its intent:

> It is first the finding of this Court after considering all of the evidence in this matter that the marriage is one of short duration. The Defendant had little going into the marriage. Her back condition pre-existed the marriage and there is no evidence of accident or trauma during the marriage to bring on the multitude of health problems that she currently suffers. Her health problems surfaced before the parties' first wedding anniversary date. The property division awarded herein gives the Defendant approximately 52% of a net marital estate in which she made almost no monetary contribution. The Court does not find that the Defendant is left economically disadvantaged.

It is the trial court's finding that Ms. Cunningham was not economically disadvantaged, after the division of marital property, that is the primary basis for her appeal. She argues she is entitled to alimony *in futuro*, alimony *in solido*, attorney's fees, and discretionary costs.

### III.  Spousal Support

Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount and duration.  *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001).  The role of an appellate court is to determine whether the award reflects a proper application of the relevant legal principles and that it is not clearly unreasonable.  *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001).  When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them.  Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 733.

Alimony or spousal support is authorized by statute, Tenn. Code Ann. § 36-5-101(a)(1), which gives courts discretion to order "suitable support and maintenance of either spouse by the other spouse . . . according to the nature of the case and the circumstances of the parties. . . ."  There are no hard and fast rules for spousal support decisions, and such determinations require a "careful balancing" of the relevant factors.  *Anderton v. Anderton*, 988 S.W.2d 675, 682-83 (Tenn. Ct. App. 1998).  In determining whether to award support and the nature, amount and length of such support, the court is to consider all relevant factors, including those enumerated in Tenn. Code Ann. § 36-5-101(d)(1), which are:

> (A) The relative earning capacity, obligations, needs and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
>
> (B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
>
> (C) The duration of the marriage;
>
> (D) The age and mental condition of each party;
>
> (E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
>
> (F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
>
> (G) The separate assets of each party, both real and personal, tangible and intangible;
>
> (H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-101(d)(1).

Initial decisions regarding the entitlement to spousal support, as well as the amount and duration of spousal support, hinge on the unique facts of each case, and the court must weigh and balance all relevant factors. *Robertson*, 76 S.W.3d at 338. Among these factors, the two considered to be the most important are the disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson*, 76 S.W.3d at 342; *Bogan*, 60 S.W.3d at 730; *Manis v. Manis*, 49 S.W.3d 295, 304 (Tenn. Ct. App. 2001). Of these two factors, the disadvantaged spouse's need is the threshold consideration.

While there is no absolute formula for determining the amount of alimony, "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support."

*Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995) (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50) (Tenn. Ct. App. 1989)); *see also Burlew*, 40 S.W.3d at 470.

The statutory factors set out above reflect considerations relevant to need and ability to pay. Similarly, they are specific factors relevant to a determination of relative economic disadvantage, which also incorporates the principles of need and ability to pay. The legislature has authorized the award of spousal support to an economically disadvantaged spouse. Tenn. Code Ann. § 36-5-101(d)(1); *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). Thus, relative economic disadvantage is a threshold requirement for an award of alimony.

The trial court herein recognized the wife's relative economic disadvantage, but attempted to reduce that disadvantage through its distribution of marital property, giving the husband most of the marital debt and giving the wife the only liquid assets. As a result of the award of property, the trial court determined that the wife was no longer economically disadvantaged. With all due respect to the trial court, however, and its meticulous and thorough analysis of the parties' assets, we

conclude that the evidence preponderates against the trial court's finding that Ms. Cunningham is not economically disadvantaged compared to Mr. Cunningham. Her opportunities to generate income through employment are limited, while he remains employed and is capable of generating a good income. Ms. Cunningham was required by the court's order to pay her attorney's fees and sizable discretionary costs of the divorce,[6] and those amounts will substantially deplete the cash she was awarded.

Simply because a spouse is economically disadvantaged, however, he or she is not automatically entitled to an award of alimony. Questions of alimony are heavily dependent on the unique facts of each case. *Hawkins v. Hawkins,* 883 S.W.2d 622, 625 (Tenn. Ct. App. 1994). *Loyd v. Loyd,* 860 S.W.2d 409, 412 (Tenn. Ct. App. 1993). *Ingram v. Ingram,* 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). All relevant factors, including those set out in Tenn. Code Ann. § 36-5-101(d)(1) must be considered when deciding questions of alimony, not only whether it is appropriate, but also determinations as to its nature, amount, duration, and manner of payment. Courts are to weigh such other factors "as are necessary to consider the equities between the parties." Tenn. Code Ann. § 36-5-101(d)(1)(L). This is, of course, a fact-specific inquiry.

A number of the statutory factors are present in the case before us. The parties argue for the emphasis of different ones. The wife argues that the relative earning capacities and physical conditions of the parties and the greater fault of the husband favor an alimony award. On the other hand, the husband argues that the division of marital property, the relatively short duration of the marriage, and the limited contribution of the wife militate against such an award. Additionally, Ms. Cunningham argues her need for support is great and cites her medical condition as limiting her ability to work and as requiring additional expenditures for care. Mr. Cunningham argues he simply has no ability to pay any support because of the debts he has assumed, the uncertainty of his commission-based income, and a downturn in the economy since the events of September 11, 2001.

It was uncontroverted that the wife's sole income was her monthly disability check of $584, and that her monthly expenses exceeded that income by a substantial amount. The medical proof shows she is limited in her ability to work or to engage in normal activities of daily living. She claimed monthly living expenses of almost $3,600 and asks for alimony *in futuro* of $3,000 per month and as alimony *in solido* the equity in the former marital home and travel trailer. Mr. Cunningham concedes that Ms. Cunningham has some need. However, he asserts her statement of expenses is inflated and specifically challenges some of the expenses claimed by Ms. Cunningham. For example, he argues she claimed $582.91 for car payments on the 1999 Tahoe and $359.67 for

---

[6]The parties dispute the necessity for many of the fees and costs, and a portion of them are related to Ms. Cunningham's attempts to prove a romantic relationship between her husband and Ms. Madewell prior to their separation. Ms. Cunningham asserts the costs are larger because of her husband's tactics and misrepresentions during discovery.

car insurance, but the proof showed she is unable to drive.[7] He also points out she claimed $850 per month for payments on the house she was awarded, but that her own statement of assets and liabilities shows that payment is $565 per month. He asserts her actual reasonable monthly expenses are close to $1,600.

Since Mr. Cunningham's income from Lowe's was based on commissions, it varied from year to year. The W-2 forms entered into the record show earnings of $75,023 in the year 1999, $61,521 in 2000, and $59,055 in 2001. Mr. Cunningham testified that his average monthly after tax income had dropped to $2,800 per month by the time of trial. He claimed monthly expenses of $3,500, leaving a deficit of $700 per month. He also argues that his 2001 income figures reflect a net monthly income of $3,500, so that, even using those figures, he has no money left after expenses to pay any support. Ms. Cunningham asserts her husband's salary averaged $65,000 per year over the past three years and that other income, such as expense reimbursement and stock bonuses, should be included in his income. She also points out deductions from his pay in 2001 for retirement contributions, stock purchase, and deposits to the credit union. She also challenges some of his claimed expenses, in particular some *pendente lite* support items he is no longer responsible for[8] and support of a child in college claimed without proof of a court order that he provide such support. Ms. Cunningham points out that Mr. Cunningham's $1,788 monthly mortgage payments on the marital home could be eliminated if he sold the house.[9] Mr. Cunningham makes a similar suggestion regarding Ms. Cunningham's payments for the house she was awarded.

During this marriage, the parties accumulated some assets, but also considerable debt. Whether or not they lived beyond their means during the marriage, it is clear they cannot separately sustain their marital standard of living. We agree with both parties that some of the claimed expenses of each can be reduced or eliminated when determining need and ability to pay.[10]

---

[7]Post judgment, Ms. Cunningham requested and obtained, through an agreed order, permission to sell the Tahoe, pay off the indebtedness on it, and purchase another less expensive vehicle with the proceeds.

[8]In response to Ms. Cunningham's post-judgment motions for certain orders pending appeal, the trial court gave her access to the funds in the stock accounts pending appeal. It is also ordered that Mr. Cunningham maintain medical and dental insurance coverage on Ms. Cunningham until the appeal was concluded.

[9]After the judgment herein, an Agreed Order was entered allowing Mr. Cunningham to refinance the mortgages and list the property for sale at $259,000.

[10]Because he was assigned the majority of marital debt, Mr. Cunningham's ability to reduce his expenses is somewhat limited. This court granted Mr. Cunningham's motion to allow the filing as post-judgment facts his Chapter 13 bankruptcy petition, the notice to creditors and the order confirming the plan. These documents show that he filed his bankruptcy petition on October 11, 2002, and that the bankruptcy court confirmed his plan "on or about" April 1, 2003. Consideration of post-judgment facts is contemplated only when those facts occur after the judgment appealed, are unrelated to the merits, and are not genuinely disputed. Tenn. R. App. P. 14, Advisory Committee Comments. However, Tenn. R. App. P. 14 does not permit a party to relitigate issues by placing before the appellate court evidence not heard by the trial court. *Duncan v. Duncan*, 672 S.W.2d 765, 768 (Tenn. 1984). Mr. Cunningham's ability to pay is, of course, related to the merits, and the trial court did not have the opportunity to consider the impact, if any, of the

(continued...)

Applying all the relevant factors to the evidence in this record, we find that Ms. Cunningham has need for some additional support and that, although the trial court laudably attempted to reduce this need through division of property, that award is not sufficient. The one-half interest in the retirement accounts is a valuable asset and will help cover her needs in the future. Its value in the short term is diminished by the penalties attached to early withdrawal. We also find that Mr. Cunningham has the ability to pay some support to his former wife.

With regard to the nature or type of alimony that may be appropriate, that determination is also subject to consideration of all relevant factors, including those listed in Tenn. Code Ann. § 36-5-101(d)(1). Where there is relative economic disadvantage, the legislature has expressed a preference for rehabilitative alimony over long-term, open-ended alimony *in futuro*. Tenn. Code Ann. § 36-5-101(d)(1); *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 470. The purpose of an award of rehabilitative alimony is to encourage divorced spouses to become self-sufficient. *Robertson*, 76 S.W.3d at 339-40; *Burlew*, 40 S.W.3d at 471. Our Supreme Court has discussed the purposes behind alimony, stating:

> The prior concept of alimony as lifelong support enabling the disadvantaged spouse to maintain the standard of living established during the marriage has been superseded by the legislature's establishment of a preference for rehabilitative alimony. The parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage. However, rehabilitative alimony may assist the disadvantaged spouse in obtaining further education or training. It may also provide temporary income to support the disadvantaged spouse during the post-divorce economic adjustment.

*Robertson*, 76 S.W.3d at 340-41.

There is no dispute in the case before us that Ms. Cunningham cannot be rehabilitated. She has stipulated that rehabilitative alimony is not appropriate, and Mr. Cunningham does not argue otherwise. However, rehabilitative alimony has not displaced other types of alimony, including alimony *in futuro* and alimony *in solido*. *Robertson*, 76 S.W.3d at 341-42; *Burlew*, 40 S.W.3d at 471; *Anderton*, 988 S.W.2d at 682. Additionally, our courts have consistently limited the duration or amount of an alimony award where the marriage between the parties was one of short duration, especially when the obligee spouse has contributed little or nothing to the marriage. *Crain v. Crain,* 925 S.W.2d 232, 234 (Tenn. Ct. App. 1996); *Flanagan v. Flanagan,* 656 S.W.2d 1,3 (Tenn. Ct. App. 1983).

Each of the parties has argued that certain relevant factors should be given more importance than others in the spousal support analysis. There are a number of competing factors present in this case, some favoring each party. Courts must consider all the factors and the circumstances of a case

---

[10](...continued)
bankruptcy filings.

and the parties and reach an equitable determination of "suitable support" according to those circumstances. Tenn. Code Ann. § 36-5-101(a)(1). Based upon the circumstances of this marriage and the parties, we conclude that an award of alimony *in futuro* would be neither equitable nor suitable because of the short duration of the marriage and the husband's sole financial support of the parties throughout most of the marriage. While Ms. Cunningham's future earning potential is limited, that limitation is in no way attributable to the marriage. The wife left the marriage with more assets than she had before the marriage. The purpose of alimony is to help meet the post-divorce needs of an economically disadvantaged spouse, not to provide a lifetime income. *Lancaster v. Lancaster,* 671 S.W.2d 501, 503 (Tenn. Ct. App. 1984).

We therefore believe it would be equitable to place a definite limit on Mr. Cunningham's alimony obligation by ordering him to pay alimony *in solido*. We award Ms. Cunningham $24,000 as alimony *in solido*. This sum will be of some help in meeting the wife's needs, but not so large as to overwhelm the husband's ability to pay. Such an award need not be paid in a lump sum, but may be paid in installments, *Isbell v. Isbell,* 816 S.W.2d 735, 738 (Tenn. 1991). Based on the facts of this case, we conclude the $24,000 should be paid in 60 monthly installments as follows: $350 per month for the first 24 months, $400 per month for the next 24 months, and $500 per month for the last 12 months, to begin with the month following the issuance of this court's mandate.

## IV. Attorney Fees

An award of attorney's fees in divorce cases is considered alimony or spousal support, generally characterized as alimony *in solido*. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002); *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001); *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001). As with other forms of spousal support, the need of the spouse requesting the award of attorney's fees is the single most important factor. *Miller*, 81 S.W.3d at 775; *Watters*, 22 S.W.3d at 821. The obligor spouse's ability to pay is also an important consideration. *Miller*, 81 S.W.3d at 775; *Hazard v. Hazard*, 833 S.W.2d 911, 917 (Tenn. Ct. App. 1991). Courts have held that in determining whether to award attorney's fees as spousal support, the most important factors are the real need of the disadvantaged spouse, a demonstrated financial inability to obtain counsel, and the ability of the obligor spouse to pay. *Wilder*, 66 S.W.3d at 895; *Cranford*, 772 S.W.2d at 50. In a recent opinion, the Supreme Court reaffirmed the holding in *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983), that an award of attorney's fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith . . ." and that the purpose of such an award is to ensure access to the courts. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 751 (Tenn. 2000) (quoting *Fox*, 657 S.W.2d at 749).

Consequently, a spouse with adequate property and income is not entitled to an award of additional alimony to compensate for attorney's fees and expenses. *Lindsey*, 976 S.W.2d at 181; *Duncan v. Duncan*, 686 S.W.2d 568, 573 (Tenn. Ct. App. 1984). If a party has adequate property and income, or is awarded adequate property in the divorce, from which to pay his or her own expenses, an award of attorney's fees may not be appropriate, after consideration of all relevant factors. *Wilder*, 66 S.W.3d at 895; *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000); *Umstot*

*v. Umstot*, 968 S.W.2d 819, 824 (Tenn. Ct. App. 1997); *Houghland v. Houghland*, 844 S.W.2d 619, 623-24 (Tenn. Ct. App. 1992); *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986). The award of attorney's fees as additional alimony is most appropriate where the divorce does not provide the obligee spouse with a source of funds, such as from property division, with which to pay his or her attorney's fees. *Yount*, 91 S.W.3d at 783. Additionally, if a spouse receives alimony as a result of the divorce and will be forced to deplete those funds, designed to sustain that spouse, just in order to pay attorney's fees, an award of attorney's fees is appropriate. *Batson*, 769 S.W.2d at 862. Thus, the primary focus is on whether the requesting spouse has the ability to pay his or her own fees; and, if not, whether the other spouse has the resources to do so. *Houghland*, 844 S.W.2d at 623.

An award of attorney's fees is considered to be within the sound discretion of the trial court. *Loyd v. Loyd*, 860 S.W.2d 409, 413 (Tenn. Ct. App. 1993); *Wallace*, 733 S.W.2d at 110-11. Consequently, such an award will not be reversed on appeal if that discretion is not abused. *Yount*, 91 S.W.3d at 783; *Garfinkle v. Garfinkle*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996); *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. Ct. App. 1988). Although other standards of review have been expressed in some cases, the Tennessee Supreme Court has made it clear that "[t]he allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion." *Aaron*, 909 S.W.2d at 411 (citing S*torey v. Storey*, 835 S.W.2d at 597 and *Crouch v. Crouch*, 53 Tenn. App. 594, 606, 385 S.W.2d 288, 293 (Tenn. Ct. App. 1964)).

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Ms. Cunningham asserts she should be awarded her attorney's fees because of her financial situation and because of her husband's fault. We note the trial court found both parties at fault in the breakdown of this marriage. Additionally, the fault of the parties is one of the factors which may be considered in an award of alimony and, consequently, an award of attorney's fees as alimony. Tenn. Code Ann. § 36-5-101(d)(1)(K); *Inman v. Inman*, 811 S.W.2d 870, 874 (Tenn. 1991); *Yount*, 91 S.W.3d at 783. However, fault alone is not sufficient to justify an award of attorney's fees in the absence of a demonstrated need for the alimony. *Wilder*, 66 S.W.3d at 895. "[W]hile fault is a factor to be considered, it must not be applied in a punitive manner against a guilty party in determining the award of alimony." *Id.* (citing *Fisher v. Fisher*, 648 S.W.2d 244, 247 (Tenn. 1983); *Gilliam*, 776 S.W.2d at 81)). The trial court can properly consider the relative fault of the parties in awarding attorney's fees, but "a spouse with adequate property and income is not entitled to an

award of additional alimony to compensate for attorney's fees and expenses." *Lindsey*, 976 S.W.2d at 181.

In the present case, Ms. Cunningham was awarded the greater share of the liquid assets in the division of marital property, and thus had a source of funds to pay her attorney fees and costs. Mr. Cunningham will be hard-pressed to pay his own attorney fees, and thus his ability to pay hers as well is questionable. We have already considered the wife's obligation to pay her own attorney's fees in our analysis of the support issue. Considering their relative financial situations after the division of property and debts, we do not believe the trial court abused its discretion in declining to award her attorney fees.

Ms. Cunningham also raises the issue discretionary costs. She asserts she was required to take depositions of four nonparties because of Mr. Cunningham's lack of candor in discovery. She also hired a private investigator who testified at trial. Although she discusses the court reporter and investigator fees in her discussion of attorney's fees, we interpret her brief as asserting that the trial court should have awarded her discretionary costs instead of ordering each party to pay his or her own.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure specifically authorizes the recovery of discretionary costs. It states:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable are: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs. Subject to Rule 41.04, a party requesting discretionary costs shall file and serve a motion within thirty (30) days after entry of judgment. The trial court retains jurisdiction over a motion for discretionary costs even though a party has filed a notice of appeal. The court may tax discretionary costs at the time of voluntary dismissal.

Pursuant to this rule, a party seeking discretionary costs must file a motion with proper support, and the court must determine if such costs were reasonable and necessary.

> Awarding costs in accordance with Tenn. R. Civ. P. 54.04(2), like awarding other costs, is within the trial court's reasonable discretion, *Perdue v. Green Branch Mining Co.*, 837 S.W.2d 56, 60 (Tenn. 1992). Accordingly, we employ a deferential standard when reviewing a trial court's decision either to grant or to deny motions to assess these costs. *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d at 84. Because these decisions are discretionary, we are generally disinclined to second-guess a trial court's decision unless the trial court has abused its discretion. *Woodlawn Mem'l Park, Inc. v. Keith*, 70 S.W.3d 691, 698 (Tenn. 2002); *Stalsworth v. Grummons*, 36

S.W.3d 832, 836 (Tenn. Ct. App. 2000); *Mitchell v. Smith*, 779 S.W.2d 384, 392 (Tenn. Ct. App. 1989).

\* \* \* \*

> Parties are not entitled to costs under Tenn. R. Civ. P. 54,04(2) simply because they prevail at trial. *Sanders v. Gray*, 989 S.W.2d 343, 345 (Tenn. Ct. App. 1998). The particular equities of the case may influence a trial court's decision about these costs. *Perdue v. Green Branch Mining Co.*, 837 S.W.2d at 60; *Stalsworth v. Grummons*, 36 S.W.3d at 835. However, the courts should, as a general matter, award discretionary costs to a prevailing party if the costs are reasonable and necessary and if the prevailing party has filed a timely and properly supported motion. *Scholz v. S.B. Int'l, Inc.*, 40 s.W.3d at 84.

*Mass. Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2003).

The record before us does not include a motion for discretionary costs with the supporting documentation showing the amounts, reasonableness, and necessity of the costs. The record does not reflect a hearing or other individualized consideration of such costs by the court or any request for one. Consequently, we decline to review the trial court's decision to allocate such costs to the party incurring them.

## V. Conclusion

The order of the trial court is affirmed as to all matters except alimony. The judgment is modified to award alimony *in solido* of $24,000 to Sylvia Cunningham, to be paid by Alan Cunningham as set out in this opinion. Remand this cause to the General Sessions Court of Putnam County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, Alan Reece Cunningham.

_____
PATRICIA J. COTTRELL, JUDGE