IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2004 Session

## ELLEN HOPSON BELL v. WILLIAM HALL BELL

**Appeal from the Circuit Court for Greene County**
**No. 00-CV-469     Jean A. Stanley, Judge**

_____

**No. E2002-02762-COA-R3-CV  - FILED NOVEMBER 29, 2004**

_____

The matter now before us finds its genesis in a divorce action brought by Ellen Hopson Bell ("Wife") against her husband, William Hall Bell ("Husband"). In her complaint for divorce, Wife sought, *inter alia*, reasonable attorney's fees. She renewed her request for fees at the conclusion of the divorce trial. Without conducting a hearing, the trial court ordered Husband to pay Wife $5,000, representing one half of her reasonable legal expenses incurred in the divorce. Husband appealed. We subsequently vacated the trial court's judgment, remanding the matter to the trial court for a hearing on the issue of Wife's entitlement to a fee award. The trial court conducted a hearing and subsequently ordered Husband to pay Wife $5,250 as an allowance on her legal expenses. Husband appeals. We affirm and hold that Wife is entitled to her fees and expenses incurred on appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded.**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and WILLIAM H. INMAN, SR.J., joined.

William H. Bell, appellant, Greeneville, Tennessee, Pro Se.

Sandra Lee Stanbery-Foster, Greeneville, Tennessee, for the appellee, Ellen Hopson Bell.

**OPINION**

I.

In ***Bell v. Bell***, No. E2001-01348-COA-R3-CV, 2001 WL 1627612, at *3 (Tenn. Ct. App. E.S., filed December 19, 2001), we vacated the judgment of the trial court awarding fees to Wife and remanded this case for a hearing to "determine, based on properly submitted evidence, whether, and to what extent, an award of attorney's fees is appropriate in this case." In accordance with our

remand, the trial court conducted a hearing.[1]  At the time of the hearing, Wife claimed $13,200 in attorney's fees.

Wife was the sole witness to testify in support of her request for fees.  She testified to the following:  her written agreement with her attorney reflecting that Wife would be responsible for the cost of her representation; her original understanding with her counsel that Wife would pay a retainer of $1,000 for the first 10 hours of work, the time anticipated to be necessary to resolve the divorce; what transpired during the pendency of the divorce proceeding; and Wife's own assets and expenses.  Although Wife testified that she believed the billing she received from her attorney to be a "fair representation of . . . the time that [her attorney] expended on the trial," there was no additional evidence proffered as to the reasonableness of the charged fees.  Based on the fact that there was no such evidence presented, Husband sought to dismiss Wife's case at the close of Wife's evidence due to Wife's "failure" to prove that the fees incurred were reasonable.  After hearing argument on Husband's motion, the trial court addressed Wife's attorney as follows:

> Frankly . . . I think it's a pretty close call.  I really think the best thing for you to have done is to get on the stand and say that these are reasonable and necessary attorney fees. . . . I think it's a close call.

The trial court, however, denied the motion.  Husband's defense consisted primarily of the testimony of Ed Kershaw[2], a Greeneville attorney, who was proffered as an expert on the standards for litigating domestic relations cases in the Greeneville area.  Husband also testified at the hearing, but his testimony on direct was limited to stating that he himself had expended a total of $3,250 for his representation.  On cross-examination, Husband denied that he had paid less than the true value for his representation.  The trial court, however, did not find this testimony to be credible.  In fact, the trial court found that it was "obvious" that "[Husband's attorney] intended to provide much if not all of his legal service to [Husband] for little or no charge."

In an order entered October 15, 2002, the trial court decreed that Husband was to reimburse Wife $5,250 in partial payment of her fees.  The trial court found that the amount sought by Wife – $13,220 – was excessive.  It adjusted that figure downward by 20%.  The court found the calculated amount of $10,500 to be "a reasonable and necessary fee in this case," and Husband was ordered to pay half of it.

---

[1] The record on appeal pertains solely to the hearing on remand.  It includes papers that were filed after we remanded this case, the transcript of the September 30, 2002, hearing following remand, and the exhibits entered at that hearing.  Neither party, however, has moved to supplement that record with any portion of the "technical record" from the original divorce action or the transcript of the divorce trial.  Therefore, out of necessity, we are limited to that which has been certified to us by the trial court clerk.

[2] At the beginning of the hearing following remand, the trial court conducted *voir dire* of Mr. Kershaw to determine if he was qualified to be an expert witness in this case.  The trial court qualified him and subsequently permitted him to remain in the courtroom during Wife's testimony so he might comment on the amount typically charged in a divorce case, and the amount of work typically performed in such a case.

II.

The single issue before us is whether the evidence preponderates against the trial court's decision to award Wife $5,250 in fees. Husband challenges the judgment of the trial court on two grounds. First, Husband contends that Wife failed to present adequate proof regarding the reasonableness of the fees incurred during the divorce proceedings. Second, Husband contends that the trial court, in effect, awarded, in his words, "punitive" alimony to Wife since she had sufficient funds to defray the cost of her own representation and, consequently, that an award of fees was not appropriate.

In support of his dual arguments, Husband attempts to rely upon facts that are not before us. Throughout his brief, Husband cites language from and frequently references documents filed in the underlying divorce action and the transcript from the divorce proceedings of February 22 and 23, 2001. However, none of this material is included in the record certified to us by the trial court clerk. The record we do have consists of the post-remand filings by the parties and the trial court's orders, the transcript of the hearing on fees, and exhibits pertaining to the issue of fees. Neither the transcript of the underlying divorce proceedings nor any portion of the "technical record" from the divorce action were certified as a part of the record. "The duty to see to it that the record on appeal contains a fair, accurate, and complete account of what transpired with respect to the issues being raised on appeal falls squarely on the shoulders of the parties themselves, not the courts." *Trusty v. Robinson*, No. M2000-01590-COA-R3-CV, 2001 WL 96043, at *1 (Tenn. Ct. App. M.S., filed February 6, 2001)(citations omitted).

In the instant case, Husband did not undertake the necessary steps set forth in Tenn. R. App. P. 24 to see that papers pertaining to the underlying divorce proceedings were certified to this court as a part of the record on *this* appeal. Consequently, our review of the factual predicates for Husband's dual arguments are limited. If the alleged errors are not reflected in the record before us, we cannot consider these arguments on appeal. *Trusty*, 2001 WL 96043, at *4.

On appeal, Husband alleges two sets of errors: first, that Wife did not proffer evidence as to the reasonableness of the fees sought to be reimbursed, and second, that Wife had adequate assets such that an award of fees is not appropriate. We will examine these issues to the extent possible given the record before us.

III.

Our review of the trial court's factual findings is *de novo* upon the record, accompanied by a presumption of correctness. Those findings cannot be disturbed by us unless the evidence preponderates against them. Tenn. R. App. P. 13(d). An award of attorney's fees is considered an award of alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. Ct. App. 1988). In determining whether a fee award is appropriate, a court is directed to consider the same statutory factors as those utilized when a court is faced with a request for general alimony. *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). Those factors are set forth in Tenn. Code Ann. § 36-5-

101(d)(1)(E) (Supp. 2003)[3]. Generally speaking, the most important factors are the need of the disadvantaged spouse and the ability of the obligor spouse to pay. *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001)(citing *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). The trial court has wide discretion to award fees, and consequently the trial court's judgment will only be interfered with if there is a "showing of abuse of discretion, where the evidence preponderates against the award, and a manifest injustice will be done if the [t]rial [c]ourt's decision is allowed to stand." *Id.* (citations omitted). In light of these principles, we turn to the issues presented by Husband's appeal.

---

[3]Tenn. Code Ann. § 36-5-101(d)(1)(E) sets forth the following factors for a trial court to weigh in awarding alimony:

> In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:
> (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (iii) The duration of the marriage;
> (iv) The age and mental condition of each party;
> (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (vii) The separate assets of each party, both real and personal, tangible and intangible;
> (viii) The provisions made with regard to the marital property as defined in 36-4-121;
> (ix) The standard of living of the parties established during the marriage;
> (x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

IV.

Husband first challenges the trial court's award of fees on the ground that Wife failed to present any evidence pertaining to the reasonableness of the requested fees,[4] and consequently, according to Husband, there was no evidence upon which the trial court could reasonably fashion such an award. Husband contends that Wife failed to proffer evidence in accordance with the relevant factors. *See* Tenn. Sup. Ct. R. 8. (DR 1.5).

We have opined in an earlier case that

> a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be.

*Cain v. Cain*, No. W2003-00563-COA-R3-CV, 2004 WL 404489, at * 2 (Tenn. Ct. App. W.S., filed March 3, 2004) (quoting *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988)). However, a party against whom a fee is requested is entitled to an asked-for hearing on the other party's request.

The trial court received testimony from Wife, Attorney Ed Kershaw, and Husband, and found the following with respect to the time invested in litigating this action: (1) that when the original complaint was filed in 2000, Wife proposed a marital dissolution agreement and made several subsequent offers, none of which were responded to until just prior to trial on February 22, 2001; (2) that parenting time and child support remained an issue until the day of mediation, which took place one week before trial; (3) that despite Wife's earlier requests for Husband's financial information, it was not provided until the eve of trial; (4) that Husband neglected to retrieve certain items awarded by the trial court in the property division despite Wife's requests that he pick them up from the former marital residence; and (5) that Wife and her attorney were required to devote several hours to what should have been "non-issues," such as whether certain bank shares were separate or marital property, where it was clear, according to the court, that these shares were separate property. Although the trial court found that the amount of time expended on this case was greater than would normally be expected in a domestic relations matter, most of it was reasonable in light of these findings as to the Husband's actions. The court also felt there was a "personal agenda" between the attorneys on both sides, which meant that more hours than usual were necessary. The court also noted, however, that some of the time expended was unreasonable because Wife's attorney expended more time on this case than it deserved.[5]

---

[4]Husband also claims that the reasonableness of the fees was not established at the divorce hearing. Since we do not have that transcript, we are not in a position to evaluate this argument.

[5]For example, the court referenced the fact that Wife's attorney filed 400 interrogatories that were limited by the court to 25 with reasonable sub-parts.

Wife did not proffer any expert testimony as to the reasonableness of the fees incurred. Husband, however, did present the testimony of Ed Kershaw, an attorney who handles domestic relations cases in Greeneville, in an attempt to demonstrate the unreasonableness of Wife's fees. Husband contends on appeal that the trial court "overlooked" Mr. Kershaw's testimony as to the following: that Wife's attorney did more work than what he or other attorneys would have done in a similar case; that the most he had ever charged for a divorce where custody was in dispute was $10,000; and that adversary counsel's method of lumping together her time on her billing statement differs from his method, pursuant to which he delineates more clearly how he spends his time. In its written order, the trial court acknowledged this testimony, but also gave credence to other evidence presented by way of Mr. Kershaw's testimony. In particular, the court cited Mr. Kershaw's complimentary statements about Wife's attorney that if she claimed she had put this many hours in this case, he believed her. The trial court also noted that "[Mr. Kershaw] has almost no familiarity with this case or its contentious nature," as the only thing he reviewed was Wife's bill from her attorney, and he only received that just prior to taking the stand. Also, Mr. Kershaw testified that although he would have done his billing differently, he could not otherwise find fault with the attorney's methodology. There was no testimony that the hourly rate of $100 to $125 per hour was an unreasonable rate for the Greeneville area; on the contrary, the parties stipulated that the attorney's hourly rates were reasonable.

Based on the foregoing evidence, the trial court determined that

> [Wife's attorney] has expended more hours on this case than is normal. This was caused largely in part by the failure and refusal of [Husband] and his attorney to timely provide financial information and to respond to and enter into good faith negotiations.
>
> The attorneys' personal animosity to each other undoubtedly also resulted in an increased number of hours. For this reason, the Court finds that the total bill of $13,220 should be reduced by approximately 20%. The Court thus finds that $10,500 is the reasonable fee for [Wife's attorney]'s services. Having said this, the Court cannot find that it is reasonable for [Wife] to pay $10,500 while [Husband] has only paid $3,250 in a case where the property has been divided in an almost equal fashion[6] and in a case where the higher attorney fee has mostly resulted from the acts of the other party.

---

[6]Again, we cannot say with specificity whether the evidence preponderates against the trial court's assessment of how the marital estate was divided at the conclusion of the divorce trial since that record was not made a part of the record on this appeal. Therefore, we will defer to the trial court's characterization of the division of property as "almost equal." *See Prescott v. Prescott*, 1990 WL 8626, at *5 (Tenn. Ct. App. M.S., filed February 7, 1990).

Despite Wife's failure to offer evidence on the issue of the necessity of the work performed by her counsel, it appears to us that the trial court, based upon its firsthand and intimate knowledge of this contentious litigation, relied, at least in part, upon the fact that Husband's actions were the impetus behind much of the time expended by Wife's attorney. Consequently, we find that the evidence does not preponderate against the trial court's judgment. Husband challenges Wife's claim that Husband's actions increased the amount of time necessary to handle this matter. He contends that he conceded custody, agreed to let Wife have virtually all of the personal property except some items of sentimental value, and proposed a settlement agreement prior to trial which Wife rejected. However, there is also evidence that Husband delayed providing information required by local rule of court, that he delayed responding to correspondence from Wife, and that he contested the classification of property when the trial court found that the property was clearly separate in nature. The evidence does not preponderate against the trial court's judgment that Husband's actions contributed, at least in part, to the excessive number of hours expended by Wife's attorney in handling this case.[7]

IV.

Husband contests the propriety of the fees awarded on the ground that Wife had sufficient assets to cover her own legal expenses. As previously indicated, in determining whether to award fees to Wife, the trial court was required to consider the factors set forth in Tenn. Code Ann. § 36-5-101(d)(1). *Houghland*, 844 S.W.2d at 623. The most important factors in the trial court's decision are the need of the disadvantaged spouse and the ability of the obligor spouse to pay. *Wilder*, 66 S.W.3d at 894. In light of these principles, the trial court arrived at the following conclusions in support of its decision to award fees of $5,250 to Wife:

> The Court understands that there are a number of factors to be considered in determining the grant of attorney fees in a case such as this. Primary amongst those are need and ability to pay. Certainly, [Wife] is not destitute. However, her separate property has drastically decreased in value due to the fluctuation in the stock market. She

---

[7]The "Acknowledgment of [Wife's Attorney]," in which Wife's attorney acknowledged that the time indicated in the attached bill was actually expended on this matter, was filed with Wife's motion for fees following the divorce trial. However, the acknowledgment was not resubmitted as an exhibit at the hearing. Despite the fact it was not made an exhibit, the trial court, in its order, indicated that "[t]he Motion contained the acknowledgment of [Wife's attorney] that her attached fee statement was time actually spent by her on behalf of the [Wife]." Husband argues that Wife's failure to resubmit this document prevented him from responding to it and conducting cross-examination based upon it. However, there is no evidence in this record that Husband ever asked the court to permit him to cross-examine Wife's attorney with respect to her charged fees. Had he made such a request, he would have been entitled to ask the attorney questions pertaining to her work and the reasonableness of her charges. In fact, in our opinion remanding this case for a hearing, we indicated that we were doing so to allow Husband an opportunity to cross-examine any witnesses called by Wife, including her attorney. *See Bell*, 2001 WL 1627612, at *3. Wife has been represented by the same attorney throughout this matter. While it is clear that material filed by the attorney was considered by the court, such was not error when no objection was made by Husband at the hearing and where he did not seek to compel the oral testimony of the attorney.

> pays a majority of the expenses for the parties' son in college. Although she nets more income than [Husband], his earning capacity is superior to hers. This is a marriage of significant duration. In dividing the parties' assets, the Court considered that a grant of attorney fees might have to be made. The Court has already found the fault in this divorce to be that of [Husband].

As discussed above, the transcript of the original divorce proceeding and the pleadings in the original divorce case are not a part of the record on this appeal. Therefore, we do not have the benefit of knowing the exact division of assets, the history pertaining to child support and alimony, and the court's reasons for its decrees in the divorce case. Based upon the evidence contained in the record now before us, we cannot say that the evidence preponderates against the trial court's award of fees to Wife. Wife testified that when, on December 20, 2000, she filed the disclosures required by the trial court's local rule, her stock in Greene County Bank was valued at about $37,000. Yet, when Wife checked the stock's value in the early part of 2003, the stock was valued at approximately $13,000. Wife testified that she paid for the bulk of her son's tuition for college by borrowing against her stock and her retirement fund, and consequently she was able to obtain approximately $41,000 in loans. Husband contributed approximately $12,000 toward this expense over a period of two years. The record also reflects that Husband's earning capacity surpasses that of Wife. Wife has a high school diploma and has completed approximately three years of college; Husband has multiple degrees, including a law degree and he presently has a law practice.[8]

Husband contends that the trial court's award of fees constitutes "punitive" alimony because Wife had sufficient assets to cover her fees and therefore the award is simply punishment for his fault in the divorce. This court has previously rejected the notion of punitive alimony, defining it as unneeded alimony that is imposed to punish a guilty spouse. *Wilder*, 66 S.W.3d at 895 (citing *Duncan v. Duncan*, 686 S.W.2d 568 (Tenn. Ct. App. 1984)). However, we find the fees awarded in this case do not fall under the rubric of "punitive" alimony. This is not an instance where the amount awarded has no rational relationship to the fees or where the trial court has demonstrated an intent to punish a spouse. *See id*. Rather, we find the evidence does not preponderate against the trial court's decision, and on the record before us, there appears to be no evidence that this award is punitive in nature.

---

[8] The trial court also noted that in dividing the parties' assets, it considered that an award of fees would be made. It appears from the transcript of the fee hearing on remand that Wife is presently living in the marital home and will remain there until their youngest child reaches the age of 18. At that point in time, the house will be sold and the proceeds divided between the parties. As we do not have the record of the divorce trial or the court's judgment of divorce, however, we cannot review the details of the division of property. Therefore, we defer to the trial court's statements with respect to the division of property.

IV.

Wife asks for an additional award of fees for professional services rendered to her on this appeal plus her expenses. We find such an award appropriate.

On the first appeal of this case, Husband complained that the trial court had not afforded him a hearing on Wife's request for fees. We agreed and remanded for such a hearing. Following the remand, the trial court gave Husband a hearing. At that hearing, each of the parties presented evidence. As far as we can tell, both parties were given a full opportunity to present such relevant evidence as they deemed appropriate. The trial court reduced Wife's bill from her attorney by 20%; it then burdened Husband with 50% of the reduced amount. The trial court clearly delineated its reasons for finding that 80% of Wife's fee bill is reasonable and its finding that Husband should pay 50% of what remained after the court's reduction. Being dissatisfied with the trial court's holding – a holding that we have found to be completely reasonable in nature – Husband pursued a second appeal *pro se*. This, of course, required Wife to respond; but not being an attorney, she, once again, had to secure the services of her attorney, to defend her fee award.

Having found that Husband should pay Wife's fees and expenses for this appeal, we remand for the trial court to hold a hearing for the purpose of determining what those reasonable fees and expenses are. *See Folk v. Folk*, 357 S.W.2d 828, 828-29 (Tenn. 1962).

V.

We affirm the judgment of the trial court in all respects. This case is remanded for a hearing to determine the amount of the fees and expenses to which Wife is entitled in connection with this appeal and for collection of costs assessed below, all pursuant to applicable law. Costs on appeal are taxed to the appellant, William H. Bell.

_____
CHARLES D. SUSANO, JR., JUDGE