IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 23, 2004 Session

**GLORIA J. BEVILL v. ELLIS M. BEVILL, SR.**

**Appeal from the Circuit Court for Hamilton County**
**No. 99D479     L. Marie Williams, Judge**

**No. E2004-00190-COA-R3-CV - FILED DECEMBER 30, 2004**

This is a post-divorce case.  The parties were divorced in 1999.  The judgment of divorce awarded Gloria J. Bevill ("Wife") alimony *in futuro* of $1,750, subject to provisions pertaining to the retirement of her then-former spouse, Ellis M. Bevill, Sr. ("Husband").  In specific terms, the judgment provided that upon Husband's retirement, he was entitled to reduce the amount of his alimony payment to $1,300, subject, however, to a stipulation in the judgment providing that Husband's post-retirement earnings could affect the amount of his obligation.  Husband retired and, pursuant to the divorce judgment, unilaterally reduced the amount of his monthly alimony payments. In response, Wife filed a petition to interpret the divorce judgment and/or modify the spousal support award.  The trial court interpreted the divorce judgment as permitting an upward modification of Husband's alimony obligation.  Upon review of the evidence, the trial court subsequently increased Wife's alimony award to $1,900 per month, in addition to awarding her attorney's fees.  It is from this order that Husband appeals.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY and SHARON G. LEE, JJ., joined.

John R. Meldorf, III, Hixson, Tennessee, for the appellant, Ellis M. Bevill, Sr.

Flossie Weill, Chattanooga, Tennessee, for the appellee, Gloria J. Bevill.

**OPINION**

I.

        Wife filed her original complaint for divorce on February 24, 1999, on the ground of irreconcilable differences or, in the alternative, inappropriate marital conduct.  The parties had been married for over 36 years.  When the complaint was filed, Wife had been disabled for at least 15

years due to severe osteoarthritis. She alleged that it was anticipated her condition would continue to prevent her from obtaining gainful employment. The complaint further states that the parties had, among other assets, a retirement plan in Husband's name that was associated with his employment at Erlanger Medical Center, and various investments, including IDS/American Express security accounts. Husband responded by denying all allegations of wrongdoing set forth in Wife's complaint, save for Wife's allegation of irreconcilable differences. He asked that the parties be declared divorced. The parties had no minor children.

When the divorce complaint was called for trial, the parties announced that they had reached an agreement as to all matters in controversy. The trial court approved their agreement in a judgment entered on December 16, 1999. In the judgment, the court granted the parties a divorce and awarded spousal support *in futuro* to Wife subject to the following provisions:

> (a) [Husband] shall pay to [Wife] the sum of [$1,750] per month, on or before the 1st of each month, beginning the month of August 1999, and shall continue to pay this amount until the later of either of the following two events: [Husband] retires from Erlanger Medical Center or until July 31, 2001;
>
> (b) Upon the occurrence of the later of either of the two events set forth above, spousal support shall be reduced to [$1,300] per month, due and payable on the 1st day of each month;
>
> (c) In the event that [Husband] continues to have earnings after his retirement from Erlanger, he agrees to notify [Wife] upon receipt of his earnings and to furnish promptly to her information as to his earnings. If the parties are unable to agree as to what effect, if any, such earnings would have on increasing her alimony, then [Husband] agrees to pay for mediation prior to litigation;

(Numbering in original omitted). The judgment also divided the parties' marital assets. It awarded Wife one-half of Husband's retirement fund from Erlanger Medical Center at the time those funds would be available for withdrawal. Husband was further required to pay Wife $75,000 upon the entry of the judgment, and $50,000 on or before July 20, 2001. Wife was also awarded $10,000 as alimony *in solido*

As additional spousal support *in futuro*, Husband would be responsible for Wife's health insurance for the remainder of her life. The divorce judgment provides that

> [Husband] shall initiate and pay the cost of [Wife]'s health insurance, including COBRA benefits for so long as they are available, for the remainder of [Wife]'s life. [Husband] shall pay, indemnify, and hold harmless [Wife] for payment of all medical, dental, hospital,

-2-

psychological, and pharmaceutical expenses incurred by [Wife] which are not paid by any third party or carrier, excepting that if [Wife] uses any health care provider not included in his private insurance plan, [Husband] shall not be responsible for any charges for said provider.

Following the divorce, the record demonstrates that issues arose between the parties concerning Husband's obligation to furnish health insurance and to cover various medical expenses. In December, 2002, Wife's COBRA benefits, which she received through Husband's health insurance, expired. Consequently, she was forced to obtain new insurance. Husband obtained the paperwork for her to apply for TennCare coverage. Wife contended, however, that she was informed TennCare was no longer accepting applications. Wife's attorney subsequently assisted her in obtaining HIPAA coverage through Blue Cross/Blue Shield, at a premium of $545.46 per month. At the time of the most recent hearing below, Husband was covering these monthly payments. An issue also arose during this period of time as to Wife's visits to her psychiatrist, Dr. McDougal. Her health insurance provided coverage for a certain number of such visits; Wife, however, exceeded the number of permitted visits. Husband remitted approximately $900 to cover the additional cost.

In February, 2001, Husband retired from Erlanger Medical Center. Subsequently, on November 1, 2001, Wife sought an injunction from the trial court to direct Husband to sign a Qualified Domestic Relations Order that would entitle Wife to one-half of the Erlanger Medical Center retirement fund per the divorce judgment. The trial court entered an appropriate order and Wife subsequently received approximately $140,000, or one-half of the retirement fund, in June, 2002. After his retirement, Husband went to work for Walgreens Pharmacy on a full-time basis. In April or May, 2003, he reduced his hours to 32 hours per week. On June 1, 2003, Husband unilaterally lowered his monthly spousal support payment to $1,300. In July, 2003, Husband commenced working at Bi-Lo Pharmacy. Although he was subsequently offered a full-time position, Husband chose to work fewer hours. Since August 1, 2003, Husband has worked 30 hours per week at $41.83 per hour.

On August 11, 2003, in response to Husband's decision to reduce his monthly alimony payments, Wife filed a "Petition for Show Cause and to Interpret and/or Modify Decree," alleging that a substantial and material change in circumstances had occurred since the entry of the divorce judgment. Wife contended that Husband's earnings increased after his retirement, that her needs had also increased, and that Husband's reduction of his support payment to $1,300 per month caused her financial hardship. She further alleged that Husband had failed and refused to comply with the divorce judgment and, consequently, she was entitled to attorney's fees. In response, Husband averred that he was entitled to reduce the amount of spousal support per the divorce judgment and that "this reduction constitutes any unanticipated change of circumstances which would entitle [Wife] to any relief." Husband also filed a counter-petition in which he alleged that Wife was in violation of the divorce judgment (1) due to her failure to pay medical bills incurred by seeing Dr. McDougal more often than provided by her health insurance, and (2) for failing to apply for "reasonably-priced health care insurance," *i.e.*, TennCare, and choosing her own insurance plan, the

cost of which Husband was required to pay. Husband alleged that these actions constituted willful contempt of the divorce judgment.

At the hearing on Wife's petition and Husband's counter-petition, the trial court received testimony from both parties. The court also heard from an employee of Creekside, the independent living center at which Wife resided, who testified as to Wife's living expenses, the size of her apartment, and the scope of services that were available to her at Creekside. The trial court entered an order on December 9, 2003, in which it found the following: (1) that the provisions of the divorce judgment that pertained to Husband's post-retirement employment permitted the court to address whether a modification of alimony was appropriate; (2) that Wife was entitled to increased alimony in the amount of $1,900 per month; (3) that with respect to Wife's visits to her psychiatrist, Dr. McDougal, Husband was required to cover the cost of those visits, even if they exceeded the number of visits permitted under her insurance; and (4) that Wife was entitled to $4,000 in attorney's fees. The trial court further found that neither Wife nor Husband was in contempt, but that Husband misinterpreted the divorce judgment. It is from this order that Husband appeals.

II.

On appeal, Husband makes several arguments challenging the trial court's decision: (1) that the trial court erred in declining to permit a reduction in Wife's alimony given the fact that Husband retired since the entry of the divorce judgment authorizing him to reduce his spousal support payments to $1,300 per month; (2) that the trial court erred by considering Husband's earning capacity rather than his actual part-time earnings in calculating his spousal support obligation; and (3) that the trial court erred by awarding attorney's fees to Wife. Husband seeks a remand of this case to the trial court for the purpose of (1) setting an appropriate level of spousal support somewhere between $1,300 and $1,750 per month; (2) allowing the $900 paid by Husband to cover Wife's "non-emergency excess visits" to Dr. McDougal to be credited toward Wife's spousal support; (3) requiring Wife to cooperate in Husband's efforts to obtain lower-cost health insurance; and (4) reversing the award of attorney's fees. Wife contends that the trial court did not err in its decision, and further seeks attorney's fees for the appeal.

III.

We must first address whether it was appropriate for the trial court to consider whether a modification of spousal support was proper. The trial court held that the issue was properly before it based on that provision of the divorce judgment which provides that

> [i]n the event that [Husband] continues to have earnings after his retirement from Erlanger, he agrees to notify [Wife] upon receipt of his earnings and to furnish promptly to her information as to his earnings. If the parties are unable to agree as to what effect, if any, such earnings would have on increasing her alimony, then [Husband] agrees to pay for mediation prior to litigation;

-4-

(Numbering in original omitted). The court interpreted this provision to mean that Husband should "supply [Wife] with information concerning his earnings and the right to litigation after mediation is reserved on this issue." Consequently, the trial court held that "[Husband] has voluntarily stayed in the work force and [the court finds] the [c]ourt has the right and obligation under the final [judgment] of divorce to address whether or not there should be an alimony modification and, if so, in what amount." We agree with the trial court's interpretation of this provision of the divorce judgment.

Husband relies primarily on the Supreme Court's decision in ***Bogan v. Bogan***, 60 S.W.3d 721 (Tenn. 2001), in support of his argument that his retirement should have prompted the trial court to reduce his spousal support obligation. In particular, Husband cites language from ***Bogan*** which provides that where an obligor spouse elects an "objectively reasonable retirement, taken in good faith and without intent to defeat the support obligation, [the retirement] constitute[s] a substantial and material change in circumstance so that a modification of support obligations may be considered." ***Id.*** at 727. The trial court acknowledged the ***Bogan*** decision as "address[ing] the interrelationship between alimony and retirement." However, it deemed ***Bogan*** to be immaterial in light of the language contained in the divorce judgment permitting the court to modify the alimony. We agree that the analysis in ***Bogan*** has little bearing on the instant case. In ***Bogan***, the court addressed whether the husband's retirement – which had *not* been contemplated by the express language in the judgment of divorce – constituted a substantial and material change in circumstance that would enable a trial court to even consider modifying alimony pursuant to the factors set forth in Tenn. Code Ann. § 36-5-101(d) (Supp. 2004). In the instant case, the divorce judgment expressly provided that should Husband continue to work following his retirement, he would be required to notify Wife of his continued employment and, should the parties be unable to arrive at an agreement as to the amount of spousal support, they would go to mediation. In addition, ***Bogan*** did not address the issue before us, *i.e.*, the impact of post-retirement earnings on a modification of alimony, and this is a distinction conceded by Husband in his brief. We agree with the trial court that the court had the "right and obligation under the [divorce judgment] to address whether or not there should be an alimony modification and, if so, in what amount." Therefore, based upon our finding that the issue of modification was properly before the trial court, we now turn to Husband's allegation that the modification ordered is not supported by the evidence.

We first address, however, another contention made by Husband. In his brief, he argues that even if some level of support exceeding $1,300 was justified, it was not appropriate for the trial court to award spousal support greater than the $1,750 provided for in the divorce judgment. In particular, Husband contends that the third provision pertaining to employment after retirement, when read *in pari materia* with the other provisions pertaining to retirement, is only meant to address the effect that his post-retirement earnings can have on the spousal support amount of $1,300. Otherwise, so the argument goes, the reduction in spousal support provided for in paragraph (b) of the retirement provision is rendered meaningless. We disagree with Husband's interpretation of the subject language. There is nothing in the "retirement" provisions that expressly or by necessary implication caps Wife's alimony at $1,750.

IV.

Modification of spousal support is "factually driven and calls for a careful balancing of numerous factors." *Bogan*, 60 S.W.3d at 727 (quoting *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. Ct. App. 1989)). Consequently, the trial court is accorded wide discretion in modifying awards of spousal support, *id.*, and, as such, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision unless it is not supported by the evidence or is contrary to the public policies reflected in the applicable statutes." *Id.* (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Our role, therefore, is to determine whether the award demonstrates a proper application of the relevant legal principles and is not clearly unreasonable. *Id.* at 733. When the trial court has articulated its findings of fact, we will presume the correctness of those findings unless the evidence preponderates against them. *Id.* at 727; Tenn. R. App. P. 13(d).

When assessing the issue of modification of alimony awards, the trial court is directed to consider those factors contained in Tenn. Code Ann. § 36-5-101(d)(1)[1] that are relevant to the matter before it. *Id.* at 730. Although all relevant factors should be considered, the two most important

---

[1]Tenn. Code Ann. § 36-5-101(d)(1)(E) sets forth the following as factors for the court's consideration:

> (i) The relative earning capacity, obligations, needs, and financial resources of each party including income from pension, profit sharing or retirement plans and all other sources;
> (ii) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;
> (iii) The duration of the marriage;
> (iv) The age and mental condition of each party;
> (v) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
> (vi) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;
> (vii) The separate assets of each party, both real and personal, tangible and intangible;
> (viii) The provisions made with regard to the marital property as defined in § 36-4-121;
> (ix) The standard of living of the parties established during the marriage;
> (x) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
> (xi) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and
> (xii) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

factors are the ability of the obligor to pay and the financial need of the party receiving the support. *Id.* While the need of the spouse receiving the alimony is the most important factor when addressing the *initial* award of spousal support, the ability of the obligor to pay should be granted equal weight on a decision to *modify* spousal support. *Id.*

The trial court increased Wife's spousal support award to $1,900 per month. In support of its decision, it articulated the following findings:

> The Court finds the income of [Husband] is between $84,000.00 and $85,000.00 per year; whereas, the income of [Wife] is around $22,000.00 to $23,000.00 per year. [Wife] is not in a position to do anything to increase her earnings other than withdrawals from or manipulation of the funds she has in an investment account. It is the position of [Husband] the Court should require [Wife] to dissipate these funds to support herself. The Court does not find that approach realistic as the funds would be totally depleted within a short period of time if she is required to draw upon them extensively for her own support. Rather, that asset is more valuable to both parties as an income-generating device for [Wife]. She realizes approximately $400.00 a month from investments and/or withdrawals presently. The Court finds [Wife] is living modestly and is attempting to manage her expenses. She has tried to accommodate the increase in her rent by giving up a carport.

> The Court finds the alimony in this case should be $1,900.00 per month. [Husband] clearly has the ability to pay and is quite frank that he has discretionary income at this point in time.

Husband challenges the trial court's increase on the ground that Wife did not demonstrate an increased financial need entitling her to more alimony. He further contends that since his post-retirement earnings were substantially less than his earnings at the time of the divorce in 1999, he does not have the ability to pay.

As to Wife's financial need, the trial court found, and the evidence does not preponderate otherwise, that Wife continued to demonstrate need for the support award. The court found that she still was unable to work, and consequently was unable to unilaterally improve her financial position. Wife testified that her expenses had increased due to a rent increase from $1,060 at the time of the divorce to $1,260 at the time of the hearing. She further stated that due to the increase, she had been forced to relinquish the carport that she rented. Although Wife's expenses may not have increased greatly since the initial award in 1999, the evidence does not preponderate against the trial court's finding that she still demonstrated financial need. Husband attempts to counter any claim that her expenses have increased by citing numerous purchases made by Wife which, by her testimony, were

gifts for her children and grandchildren. Yet, we do not find that this evidence preponderates against the trial court's apparent concern that Wife is unable to unilaterally alter her financial situation.

Husband also faults the trial court for failing to consider that Wife received a substantial sum from Husband's retirement plan. Therefore, so the argument goes, the trial court should have ordered Wife to deplete some of the assets contained in her IDS/American Express account rather than increase her award of alimony. In support of his argument, Husband refers us to the Supreme Court's language in *Bogan* in which that court opined in declining to increase the wife's alimony that "[w]e would note the important, if not overlooked, fact that Ms. Bogan has received a substantial sum from Mr. Bogan's retirement plan, an additional amount that she was not entitled to receive before his retirement." *Bogan*, 60 S.W.3d at 733. Consequently, the *Bogan* court factored in the assets received from the retirement fund to hold that the wife was not entitled to an increase in her alimony award. *Id.* We find, however, that the facts before us present an entirely different scenario from that in *Bogan*. In *Bogan*, the wife's expenses had increased by $192 since the divorce, and although she still fell short of her monthly expenses, the trial court found that she could supplement her earnings by investing the lump sum payment from her husband's retirement plan. *Id.* at 732, 733. However, in balancing the wife's need against the husband's ability to pay, the court noted that Mr. Bogan's only income stemmed from his retirement investments, which yielded half of the income he was earning when the original support award was made. *Id.* at 732. In the instant case, however, Husband continued to receive earnings after his retirement by virtue of his part-time employment such that he did not have to disturb his savings in order to cover his expenses. We therefore find that the evidence does not preponderate against the trial court's decision not to compel Wife to deplete her savings.

In his brief, Husband contests the trial court's conclusion that forcing Wife to deplete her assets would be unrealistic since the funds would be depleted in a short period of time. Husband retorts by arguing that since the difference between what Husband was paying prior to the court's decision and the court's order was only $600, it would take almost 35 years for Wife to deplete her assets even if they earned no interest. Husband further argues that since Wife maintains a minimum balance of $2,500 to $4,100 per month in her checking account, which represents four to seven months of the increase in support, she is hardly someone who is so destitute as to require an increase in alimony. We find, however, that the evidence does not preponderate against the trial court's decision, and we defer to that judgment when the evidence does not dictate otherwise.

Husband also challenges the trial court's findings as to his ability to pay. In particular, he challenges the trial court's finding that his income was between $84,000 and $85,000 per year, arguing that these figures are unsupported by the evidence, and that it is unclear how the court arrived at those numbers. Husband further contends that the trial court erred in relying upon Husband's earning capacity rather than his actual earnings, arguing that (1) he had retired and was no longer under any obligation to continue working, and (2) that he had actual earnings at the time of the hearing that should have been used for the purposes of modifying the award of spousal support.

At the hearing, the parties introduced into evidence Husband's tax returns from 1999 through 2002, which indicated that Husband received gross income in the following amounts for those years: $77,418 in 1999; $105,629 in 2000; $102,596 in 2001; and $86,484 in 2002. Husband argues that the trial court's reliance on these figures was improper since they were only relevant to his earnings in the years prior to the petition to modify. Since, according to Husband, he had the right to accept retirement, his "earning capacity" became non-existent once he retired since he was no longer obligated to work. As support for this argument, Husband relies upon language in this court's opinion in *Lamberson v. Lamberson*, No. M2002-02773-COA-R3-CV, 2004 WL 170388 (Tenn. Ct. App. M.S., filed January 27, 2004). In *Lamberson*, the husband was involuntarily terminated due to a change in job duties that would require substantial travel. *Id.*, at *1. We found the evidence failed to support the trial court's judgment that such a decision was a willful attempt to shirk his alimony obligations; rather, we held that, under those circumstances, such a decision constituted a substantial and material change of circumstance entitling him to some relief from his alimony obligation. *Id.*, at *5. Consequently, in remanding the case for a determination of the extent of that relief, we stated that "[i]t is well to note that the relief available to Mr. Lamberson on remand may be limited in time due to the fact that at the time of the hearing in this case on appeal he was fast approaching the level of pay that he enjoyed" in his previous employment. *Id.*, at *6. Husband relies upon this language to argue that we should set alimony based upon what he is actually earning rather than his earning capacity. We find, however, that this argument is without merit. It appears from the evidence adduced at the hearing that regardless of whether the trial court considered Husband's earnings from previous years based upon tax returns submitted into evidence, there was evidence before the court of his earnings for 2003. The record reflects that Husband earned $48,120.86 from Walgreens through July 4, 2003, and as of July 17, 2003, there is documentation indicating that Husband commenced working thirty hours per week at Bi-Lo Pharmacy at the rate of $41.83 per hour. In addition, evidence proffered at the hearing demonstrated that his earnings from his part-time job enabled him to make purchases and cover his living expenses without depleting his savings. In fact, testimony revealed that some of those expenditures have included a $25,000 boat and a $39,260 truck, both of which were purchased in April, 2003; a gift of $6,000 to a family friend; $3,600 to cover the cost of tuition for his girlfriend's child; and various sums to cover the cost of repairing his girlfriend's car. Consequently, we do not find that the evidence preponderates against the trial court's judgment awarding an increase in alimony where the Wife continues to demonstrate financial need, and the evidence indicates that Husband has the ability to pay.

V.

Husband further challenges the trial court's award of attorney's fees to Wife in the amount of $4,000. Awards for attorney fees are considered alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn Ct. App. 1988). In determining whether or not such an award is appropriate, a trial court is therefore directed to consider the same statutory factors as those used to order alimony, which are set forth in Tenn. Code Ann. § 36-5-101(d). *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. Ct. App. 1992). The most significant factors to the trial court's decision are the need of the disadvantaged spouse and the ability of the obligor spouse to pay. *Wilder v. Wilder*, 66 S.W.3d 892, 894 (Tenn. Ct. App. 2001) (citing *Cranford*, 772 S.W.2d at 50). The trial court has wide discretion

to award fees, and consequently the trial court's judgment will only be interfered with if there is a "showing of abuse of discretion, where the evidence preponderates against the award, and a manifest injustice will be done if the [t]rial [c]ourt's decision is allowed to stand." *Id.* (citations omitted).

In the instant case, we do not find that the trial court abused its discretion in awarding $4,000 of the $4,895 sought by Wife. As stated herein, the trial court found, and we agree, that Wife does not have the ability to pay, whereas Husband has discretionary income.

Should we find that Wife is entitled to attorney's fees, Husband urges this court to apply toward that amount the $900 expended by Husband to cover the cost for Wife to see Dr. McDougal, her psychiatrist, more times than was allotted by her health insurance plan. With respect to Husband's obligation to provide health insurance to Wife, the divorce judgment provides

> [Husband] shall initiate and pay the cost of [Wife]'s health insurance, including COBRA benefits for so long as they are available, for the remainder of [Wife]'s life. [Husband] shall pay, indemnify, and hold harmless [Wife] for payment of all medical, dental, hospital, psychological, and pharmaceutical expenses incurred by [Wife] which are not paid by any third party or carrier, excepting that if [Wife] uses any health care provider not included in his private insurance plan, [Husband] shall not be responsible for any charges for said provider.

(Numbering in original omitted). The trial court held that Husband was liable for any expenses enumerated in the above provision, "even if they exceed the benefits provided for in the insurance contact [sic]." Since we agree with the trial court's interpretation of the divorce judgment, we decline to credit Husband so as to diminish his obligation to compensate Wife for legal fees.

## VI.

Wife seeks attorney's fees for costs incurred on appeal and therefore asks this court to remand this case to the trial court for a determination of those fees incurred on appeal. Courts have authority to award fees incurred on appeal. *Seaton v. Seaton*, 516 S.W.2d 91, 93 (Tenn. 1974). Where appropriate, an appellate court will remand to the trial court to determine the amount to award for fees on appeal. *Folk v. Folk*, 357 S.W.2d 828, 828 (Tenn. 1962). Factors to be considered on remand are discussed in *Folk*. *Id.* at 829.

Based upon the record before us, we find that an award of fees is appropriate and we remand this case to the trial court for a determination of the amount of reasonable fees to which Wife is entitled.

## VII.

We affirm the judgment of the trial court in all respects.  This case is remanded to the trial court to set Wife's fees on appeal, for enforcement of the judgment, and for collection of costs assessed below, all pursuant to applicable law.  Costs on appeals are taxed to the appellant, Ellis M. Bevill, Sr.

_____
CHARLES D. SUSANO, JR., JUDGE