# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### February 1, 2010 Session

# DEBORAH SOUTHERN ANTRICAN v.
# ALVIN MICHAEL ANTRICAN

### Appeal from the Chancery Court for Hancock County
### No. 06-8976      E.G. Moody, Chancellor

---

### No. E2009-01028-COA-R3-CV - FILED MARCH 22, 2010

---

This is a divorce case following a long-term marriage. Following a trial, the Trial Court classified the property as separate or marital, divided the marital property, awarded Wife $30,000 as her share of farm income that was earned after the parties separated, and awarded Wife alimony in futuro of $800 per month and alimony in solido of $20,000 for partial payment of her attorney fees. Both parties appeal raising various issues. We modify the award of $30,000 in farm income to an award of $2,184. We also modify the award of alimony in futuro to be $400 per month, with this modification to become effective sixty days from the date our judgment is entered. In all other respects, the judgment of the Trial Court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery
### Court Affirmed as Modified; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Douglas R. Beier, Morristown, Tennessee, for the Appellant, Alvin Michael Antrican.

Denise Terry Stapleton, Morristown, Tennessee, for the Appellee, Deborah Southern Antrican.

**OPINION**

**Background**

Husband and Wife were married in March 1978.[1]  Almost twenty-eight years later, in January 2006, Wife filed a complaint seeking a divorce from Husband on the ground of adultery.  Alternatively, Wife sought a divorce based on irreconcilable differences.  Husband answered the complaint and generally denied any fault.  Husband filed a counter-claim also seeking a divorce.  Husband alleged that Wife was guilty of inappropriate marital conduct or, alternatively, that irreconcilable differences existed between the parties.  The parties have two adult children.

The trial was on February 11, 2009.  Much of the general background information as well as most of the information pertaining to the property owned by one or both of the parties and that property's value is not in dispute.  Accordingly, we quote liberally from the Trial Court's opinion:

> Husband (Defendant) and Wife (Plaintiff) have been married for 35 years.  The Husband voluntarily moved out of the marital residence on March 31, 2004.  The Parties have 2 adult children.
>
> The Wife is 54 years old; she has a Master's Degree; she is a tenured teacher with the Hancock County School System; she has taught school for 30 years; she is currently employed in the Administrative Offices of the Hancock County School System as Assistant Director of Federal Programs; her monthly income is $4,323 . . . and her annual income is $51,882.
>
> The Husband is 55 years old; he has a Master's Degree; he is a tenured teacher with the Hancock County School System;

---

[1] At trial, both parties testified that they were married for "thirty-five" years.  Surprisingly, at trial neither of them was asked on what day they actually were married.  If they were married in March 1978, as alleged in the complaint, then they would have been married for thirty years at the time of trial in February 2009.  We thought we had found the answer to this riddle when we came across the following from Husband's testimony: "Deb had left once before and we've been divorced once before when she had ran off with another man and we married back. . . ."  When counting both marriages, perhaps the parties were married for "thirty-five" years.  We, however, cannot be certain that this is the solution to the riddle because Wife stated in the complaint that this was the first marriage for both parties, an allegation admitted by Husband.

he has taught school for many years; he is currently employed by the Hancock County School System as the Director of Schools which position he has held for nineteen years; his monthly income is $6,416 per month and his annual income is $76,992.

The Husband, as Director of Schools, has the authority to terminate the Wife as the Assistant Director of Federal Programs. The Wife has always worked both outside of the home and as a homemaker except for a short time following the births of the parties' children. The Husband testified that the Wife was and is a good mother. . . .

The Husband admitted that he has had an adulterous relationship since 2002 or for two years prior to his moving out of the marital residence. The Husband hired his paramour in a position with the Hancock County School System making $18,000 per year and allowed her to work in the same office as the Wife until the Wife persuaded him to transfer her to another office. The Wife had been faithful to the marriage.

[The Wife is in] good health. The Husband has had cancer which is in remission and he has diabetes which is well controlled.

The parties agreed to use Mr. David Britton as a real estate appraiser and agreed to be bound by his appraisals as to the fair market values of the real estate in question. The parties agreed that the 454 Janet Drive house and the 1.1 acres where the wife resides is marital property; Mr. Britton appraised it for $168,000 and it is unencumbered. The parties agreed that the Cantwell Valley Road property consisting of 11.09 acres is marital property; Mr. Britton appraised it for $24,000 and it is unencumbered.

The Husband constructed a new house in 2005 on the 150 acres in Cantwell Valley which was given to him by his parents in 1997; his mother has a life estate in it which has a value of $88,433; Mr. Britton appraised it for $310,000, and it is encumbered in the amount of $80,000.

The 12.1 acres in Grainger County was deeded to the parties by the Husband's mother as shown in Exhibit 4; the deed was delivered to him; the deed has not been recorded; Mr. Britton appraised it for $32,000 and it is unencumbered.

The 12 acres in Cantwell Valley is in the names of the Husband and his mother. The Husband's interest was given to him by his mother in 1997.

The 48 acres at Union Ridge was a gift to the Husband from the Husband's parents; it is in his name and it is subject to the life estate of his mother.

The parties took over the farming operations of the Husband's parents in 1992. The parties agreed that the fair market cash value of the cattle is $74,100 and that the fair cash market value of the farm equipment is $24,200. (original paragraph numbering omitted and shorter paragraphs combined).

In addition to the foregoing, the parties were able to agree to the fair market value of the following property: (1) Wife's furniture, $15,000; (2) Husband's furniture, $2,412; (3)Wife's retirement, $94,298.49; (4) Husband's retirement, $99,121.95; (5) Wife's annuity with AIG, $8,000; (6) Wife's 2002 Tahoe, equity totaling $700; (7) Husband's 2004 GMC truck, equity totaling $7,000; (8) Husband's 1989 Dodge, $1,500; (9) Husband's 1989 Nissan, $500; (10) Husband's 1987 Jeep, $600.

Wife had several credit cards, and the parties agreed that Wife was the only one who used the credit cards. According to the Trial Court, Husband acknowledged that most of these debts were longstanding and incurred for family expenses. In short, even though the credit cards were in Wife's name only and even though she was the party who incurred the debt, the Trial Court found that all of these debts were marital debts. The credit cards and related debts, including a loan from Wife's parents that was used to pay off a high-interest credit card, are as follows: (1) AIG, $3,600; (2) Bank of America, $25,000; (3) Discover, $6,177.14; (4) Sam's, $1,300; (5) Q card, $1,088.72; (6) Chadwick's, $675; (7) J.C. Penney, $600; (8) First Century Bank $4,200; (9) Wife's parents, $21,800. These debts total $64,440.86.

Although the parties agreed on the value of most of the property, they were at odds as to how some of it should be classified, i.e., as separate or marital property. The

-4-

parties also were in sharp disagreement as to how to divide that property and whether Wife was entitled to alimony.

As relevant to this appeal, Husband testified that he constructed a house on the 150 acres located in Cantwell Valley. Husband paid for all of the construction, etc., to build the house. This house was built after the parties separated but while they still were married. Husband admitted that any real property that has been accumulated was accumulated during the marriage.

Husband acknowledged that Wife was a homemaker in addition to working a full-time job outside of the home during most all of the marriage. When asked if Wife assisted with the tobacco grown on the farm, Husband responded that she assisted "mainly" on her parents' farm. Husband eventually acknowledged that Wife assisted with the farming duties, although he minimized the amount of assistance she provided. Husband acknowledged that Wife helped haul hay and helped feed and vaccinate the cattle. Husband admitted that Wife borrowed money to buy a tractor for the farm. Husband admitted that during the marriage Wife had purchased tools and supplies for the farm and the marital residence. Husband testified that the gross income from the farm was approximately $30,000 per year, but the net income was much less. Relying on the income tax returns entered as exhibits at trial, for the years 2005 through 2007, there was total net farming income of $4,368 for those three years.

The parties disagreed on how to classify 12.1 acres of land located in Grainger County. With respect to this property, Husband acknowledged that the warranty deed from his mother lists both Husband and Wife as the grantees. Husband claimed that he and Wife never paid his mother for the property and so the deed never was recorded. According to Husband, he had agreed to pay his mother $10,000 for the property, but those funds never were paid.

Husband also testified about a separate 12 acre tract of property in Cantwell Valley.[2] Husband testified that this property was transferred to him and his mother in 1998.

Husband borrowed $67,000 to build his current house, and his mother co-signed the note for this loan. Husband's payment on this loan is $800 per month. This debt was incurred during the marriage, and Husband claimed it is a marital debt. There is no mortgage on this house.

---

[2] Wife correctly points out that while the deed to this property states that the property consists of 12 acres, an appraisal showed that the property actually was 23.2 acres. We will refer to this property as a 12 acre tract because that is how the Trial Court referred to this property.

Husband previously had filed an affidavit of income and expenses with the Trial Court and affirmed most of its accuracy at trial. Husband's affidavit lists his health insurance payment twice[3] and also includes his then *pendente lite* alimony payment. It also was no longer accurate with regard to the amount of taxes, which also had been counted twice. Not counting the alimony payment, deducting the post-divorce amount of Husband's health insurance and counting it only once, adjusting the tax payment, and eliminating a phone and cable bill that Husband does not have, Husband's affidavit shows monthly expenses of $2,931.00 and net monthly income of $4,149.28 before deducting the $2,931.00.

Wife testified that she and Husband both owned the Grainger County property and both were on the deed. Wife indicated that no one ever told her that the deed allegedly was invalid because Husband's mother had not been paid $10,000. Wife testified that she helped Husband with the tobacco grown on the farm, and that she helped haul hay and fence in the farm. Wife also helped with the cattle. Wife always considered the farm joint property.

Wife also filed an affidavit of monthly income and expenses and testified regarding same at trial. In her affidavit, Wife listed her net monthly income as $3,020.29 and her monthly expenses at $3,905.92. Based on this shortfall, Wife sought an award of alimony. Wife's affidavit, however, included payments for all of the credit cards and other debt that the Trial Court ultimately held Husband responsible for paying. Backing out payments for credit cards and other debts for which Husband was held responsible, Wife's monthly expenses totaled $2,518.92. This total also includes monthly charitable contributions of $354.15 and gifts of $62.50.

Based on the testimony of the parties, the Trial Court found that both the 12 acres on Cantwell Valley Road and the 48 acres at Union Ridge were Husband's separate property. The Trial Court further found that the 12.1 acres in Grainger County and the 150 acres in Cantwell Valley where Husband built his new house both were marital property. As to the farming equipment and the cattle, the Trial Court found them to be marital property. The Trial Court's classification of these five items are at issue on appeal.

After classifying the property, the Trial Court then divided the marital property. The Trial Court awarded Wife marital property valued at $309,998.49. Wife was not held

---

[3] Husband's health insurance payment was $715 which included family coverage for him and Wife. However, this payment was listed as a monthly expense and also was listed a second time as a deduction from the gross amount of Husband's paycheck. In addition, Husband acknowledged that once he and Wife are divorced and he no longer carries her on his insurance, his monthly payment will decrease to $357.50. We have used this latter figure when determining Husband's monthly expenses.

responsible for any of the marital debt. Husband was awarded marital property valued at $386,000.95. However, Husband also was held responsible for all of the $64,440.86 in marital debt plus the note related to the new house built by Husband, resulting in a net award to Husband of $321,560.09. *See* footnote 8, *infra* at page 12. In addition, the Trial Court concluded that as to the net farm income for 2005 through 2007, Wife was entitled to $30,000 as her share. Finally, the Trial Court found that Wife was entitled to an award of alimony in futuro of $800 per month as well as a one time payment of $20,000 as alimony in solido to go toward partial payment of her attorney fees.

Husband appeals raising numerous issues. First, Husband claims that the 12.1 acres in Grainger County and the 150 acres in Cantwell Valley were not marital property, and the Trial Court erred when it classified this property as such. Husband also alleges that the Trial Court erred when it found that the farm was marital property, and that Wife was entitled to $30,000 as her share of the net farming income from 2005 through 2007. Next, Husband claims that the overall property distribution was inequitable. Finally, Husband claims the Trial Court erred when it awarded Wife alimony in futuro of $800 per month and alimony in solido of $20,000 toward partial payment of her attorney fees.[4]

Wife also appeals. Wife claims that the Trial Court erred when it found that the 12 acres on Cantwell Valley Road and 48 acres on Union Ridge were Husband's separate property. Wife also claims that the Trial Court should have ordered Husband to pay all of her attorney fees. In all other respects, Wife maintains that the judgment of the Trial Court should be affirmed.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

---

[4] Although not entirely clear, it appears that Husband is challenging a finding by the Trial Court that he was in contempt of court. Because this issue was not set forth in Husband's Statement of the Issues, in the event that Husband is attempting to raise this as an issue on appeal, we consider it waived.

We first will discuss whether the Trial Court correctly classified the property at issue as separate or marital. As relevant to this appeal, Tenn. Code Ann. § 36-4-121(b) defines marital and separate property as follows:

(b) For purposes of this chapter:

(1)(A) "Marital property" means all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce, except in the case of fraudulent conveyance in anticipation of filing, and including any property to which a right was acquired up to the date of the final divorce hearing, and valued as of a date as near as reasonably possible to the final divorce hearing date. . . . All marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property.

(B) "Marital property" includes income from, and any increase in value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation, and the value of vested and unvested pension, vested and unvested stock option rights, retirement or other fringe benefit rights relating to employment that accrued during the period of the marriage. . . .

(D) As used in this subsection (b), "substantial contribution" may include, but not be limited to, the direct or indirect contribution of a spouse as homemaker, wage earner, parent or family financial manager, together with such other factors as the court having jurisdiction thereof may determine. . . .

(2) "Separate property" means:

(A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986, as amended;

(B) Property acquired in exchange for property acquired before the marriage;

(C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1); [and]

(D) Property acquired by a spouse at any time by gift, bequest, devise or descent . . . .

Tenn. Code Ann. § 36-4-121(b) (2005).

As stated previously, the Trial Court found that the 12 acres in Cantwell Valley and the 48 acres in Union Ridge[5] were Husband's separate property. As to the 12 acres in Cantwell Valley, the warranty deed shows that the record owners of the property are Husband and his mother, Nola Antrican. Husband testified that this property was deeded to him as a gift. Wife offered no credible evidence or argument to the contrary. As to the property at Union Ridge, this property was deeded solely to Husband by his mother and father in 1997. Both of Husband's parents retained a life estate in this property. Again, Wife offered no credible proof that this property was not intended to be a gift solely to Husband. Because the facts do not preponderate against the Trial Court's factual determination that these two pieces of property were Husband's separate property, the judgment of the Trial Court with respect to these two items is affirmed.

When Husband's mother intended to gift property to Wife and not just to her son, she certainly was free to include Wife on the deed, which is exactly what happened in the deed pertaining to the 12.1 acres located in Grainger County. In 2001, Husband's mother deeded this property jointly to Husband and Wife. As did the Trial Court, we reject Husband's argument that this deed is invalid because he allegedly never paid his mother $10,000 for this property. There is nothing in the deed indicating a sale price, assuming that there even was one, or that the sale price had not been paid at the time the deed was executed. The Trial Court found that this "conveyance was completed upon the delivery of the deed to the Husband and that the property is marital property." The Trial Court also noted that although Husband's mother was present at trial, she did not testify.

As to the property where Husband built his new house, there is no doubt that he built his new house with marital funds as the parties still were married when the house

_____

[5] This property is sometimes referred to in the record as being located on Union Church Road. Since the Trial Court used "Union Ridge", that is the designation we also shall use.

was built.[6] This land was acquired many years before the parties separated and more years before they were divorced. The Trial Court found that "the Husband inextricably commingled [the 150 acres] with marital property when he built and furnished a house on [the 150 acres] with marital property which converted it to marital property."

The facts do not preponderate against the Trial Court's findings and ultimate conclusions that the real property in Grainger County and the property where Husband's house is located, as well as Husband's house, are marital property. We affirm the Trial Court's judgment as to the classification of these two properties.

The final piece of property at issue is the farm. Although Husband attempted to downplay Wife's contributions to the farm, he eventually admitted that Wife made many contributions over the years. If Wife's testimony is credited, the amount of her contributions were even more significant. In addition, Wife took out a loan to purchase farm equipment. As to the cattle and farm equipment, Husband's and Wife's testimony conflicted in numerous aspects. The Trial Court specifically found Wife's testimony to be more credible on this issue, and found the cattle and farm equipment to be marital property as was the farming operation. Given the Trial Court's credibility determination on this issue, the evidence does not preponderate against the Trial Court's findings that the farm was marital property, and we affirm the Trial Court's judgment in that regard.

Even though we have affirmed the Trial Court's judgment that the farm was marital property, another issue is raised with respect to the farm. Specifically, Husband claims that the Trial Court erred when it ordered Husband to pay Wife "the sum of $30,000 for her share of the *net* farm income for 2005, 2006, and 2007." (emphasis added) The Trial Court could not have awarded Wife $30,000 as her share of the *net* farm income as the evidence shows the net farm income for those three years was much less than $30,000. Apparently the Trial Court awarded her a share of the *gross* farm income for that three year period. The income tax returns exhibited at trial, the only evidence presented relevant to the net farm income, unequivocally show that the farm's net income for that three year period was only $4,368. Husband admitted at trial that none of the $4,368 was shared with Wife, to whom he was still married when the income was earned. Therefore, we modify the Trial Court's judgment to award Wife $2,184 instead of $30,000 as her share of the net farm income.[7]

---

[6] Husband correctly claims that the debt on the house is marital debt.

[7] Wife claims that to the extent the Trial Court may have awarded Wife too much for her share of the farm proceeds, any such error is off-set by the fact that Husband received governmental tobacco farming
(continued...)

Having affirmed the Trial Court's classification of the property, the next issue is whether the marital property distribution was equitable. When making an equitable division of marital property, a trial court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

---

[7](...continued) subsidies. Wife has failed to establish that these subsidies were not factored into the overall profitability of the farm or that these funds otherwise were not reinvested in the farm.

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties. . . .

Tenn. Code Ann. § 36-4-121(c) (2005).

A trial court has wide discretion in dividing the interest of the parties in marital property. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449 (Tenn. Ct. App. 1991). As noted by this Court in *King v. King*, when dividing marital property:

> The trial court's goal in every divorce case is to divide the parties' marital estate in a just and equitable manner. The division of the estate is not rendered inequitable simply because it is not mathematically equal, *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996); *Ellis v. Ellis*, 748 S.W.2d 424, 427 (Tenn. 1988), or because each party did not receive a share of every item of marital property. *Brown v. Brown*, 913 S.W.2d [163] at 168. . . . In the final analysis, the justness of a particular division of the marital property and allocation of marital debt depends on its final results. *See Thompson v. Thompson*, 797 S.W.2d 599, 604 (Tenn. App. 1990).

*King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998) (quoting *Roseberry v. Roseberry*, No. 03A01-9706-CH-00237, 1998 WL 47944, at *4 (Tenn. Ct. App. Feb. 9, 1998), *no appl. perm. appeal filed)*.

Wife was awarded a total of $309,998.49 in marital assets with no corresponding debt. Thus, Wife's net award of marital property was $309,998.49. Husband was awarded a total of $386,000.95 in marital assets and $64,440.86 in marital debt, thereby resulting in a net award to him of $321,560.09. In short, Husband was awarded 50.9% of the net marital property, and Wife was awarded the remaining 49.1%.[8]

---

[8] In discussing the overall property awards, we note that when the Trial Court ordered Husband to pay Wife $30,000 for her share of the farm income, those funds were not factored into the Trial Court's overall award to Wife of $309,998.49 in assets. Thus, our modification of that award does not materially change the fact that Wife received 49.1% in net marital assets. In addition, with respect to the $67,000 loan on Husband's house, which is a marital debt, the amount of that loan was taken into account when that asset was awarded to Husband. Specifically, the Trial Court reduced the net value of that asset by the amount of
(continued...)

The parties are close in age and have the same level of education. They both have long-term jobs. They both contributed to the accumulation of assets during the marriage as both were actively employed outside of the home for most, if not all, of the marriage. In addition, both parties contributed to the preservation of the marital home and the farm. Both parties are receiving a substantially similar amount of net assets. In short, when considering the relevant factors set forth in Tenn. Code Ann. § 36-4-121(c), we cannot conclude that the marital property distribution was inequitable, and we affirm that judgment with the sole modification as to the amount Wife is to receive as her share of the net farm income for 2005 - 2007.

We next consider the award of alimony in futuro. Trial courts have broad discretion to determine whether alimony is needed and, if so, the nature, amount, and duration of support. *See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996). Pursuant to Tenn. Code Ann. § 36-5-121(i), the court is to consider the following factors in determining alimony:

> (1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

> (2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

> (3) The duration of the marriage;

> (4) The age and mental condition of each party;

> (5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

> (6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

---

[8](...continued)
the loan before awarding it to Husband.

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2005).

There are no hard and fast rules with respect to spousal support decisions. *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998). Decisions regarding alimony require a careful balancing of the factors in Tenn. Code Ann. § 36-5-121(i) and typically hinge on the unique facts and circumstances of the case. *See Anderton*, 988 S.W.2d at 683. While all of the statutory factors are significant, the two most important factors are the obligor spouse's ability to pay and the need of the disadvantaged spouse. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

The Tennessee General Assembly has stated its intent that "a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony." Tenn. Code Ann. § 36-5-121(d)(2). In those cases where rehabilitation is not feasible, "the court may grant an order for payment of support and maintenance on a long-term basis or until death or remarriage of the recipient . . . ." Tenn. Code Ann. § 36-5-121(d)(3). The purpose of an in futuro award is to "mitigate the harsh realities of divorce" and "to provide financial support to a spouse who cannot be rehabilitated." *Burlew v. Burlew*, 40 S.W.3d 465, 471 (Tenn.

-14-

2001). Alimony in futuro serves the purpose of providing support to the spouse who is unable to achieve self-sufficiency. *Loria v. Loria*, 952 S.W.2d 836, 838 (Tenn. Ct. App. 1997). It is also intended to aid the disadvantaged spouse when economic rehabilitation is not feasible, in order to mitigate the harsh economic realities of divorce. *Id*.

When the Trial Court awarded Wife alimony in futuro, it did so in an attempt to elevate Wife's post-divorce standard of living. This is an appropriate consideration. Tenn. Code Ann. § 36-5-121(f)(1) states:

> (f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1) (2005).

Given the fact that Wife has a Master's Degree and has been employed with the Hancock County School System for 30 years, there is no need for rehabilitative alimony. As set forth previously, Husband has net monthly income of $4,149.28 and net monthly expenses of $2,931. After paying his monthly expenses, Husband has $1,218.28 remaining. Wife has net monthly income of $3,020.29 and net monthly expenses of $2,518.92, leaving her with $501.37 each month after expenses. Wife has no mortgage payment and was not held responsible for any of the marital debt.

When considering all of the relevant factors, we conclude that the award of $800 per month in alimony in futuro was excessive. After Husband makes that payment, he is left with $418.28 per month, while Wife now has $1,301.37 left over. In order to achieve a better balance between the parties' post-divorce standard of living, we modify the award to reflect an award of alimony in futuro in the amount of $400 per month. In modifying the award, we note that "[t]he parties' incomes and assets will not always be sufficient for them to achieve the same standard of living after divorce that they enjoyed during the marriage." *Robertson v. Robertson*, 76 S.W.3d 337, 340 (Tenn. 2002). This may well be one of those

cases. We further hold that this modification is to take effect sixty days from the date our judgment is entered. Until that time, Husband is to pay alimony as ordered by the Trial Court.[9]

The final issue is Husband's claim that the Trial Court erred when it awarded Wife $20,000 in alimony in solido toward payment of her attorney fees. Wife claims the Trial Court erred by not requiring Husband to pay all of her attorney fees. An award of alimony in solido for payment of attorney fees likewise should be based on the factors set forth in Tenn. Code Ann. § 36-5-121(i), and is appropriate when the spouse seeking attorney fees does not have adequate funds to pay his or her legal expenses. *See Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). Conversely, a spouse with sufficient property or income to pay his or her attorney fees is not entitled to be compensated. *Koja v. Koja*, 42 S.W.3d 94, 98 (Tenn. Ct. App. 2000). If a spouse is receiving alimony intended to sustain that spouse, and he or she would be required to deplete those funds in order to pay attorney fees, then an award of attorney fees is proper. *See Batson v. Batson*, 769 S.W.2d 849, 862 (Tenn. Ct. App. 1988).

Wife submitted an affidavit from her attorney showing fees and expenses totaling $32,078.89. Husband argues that the affidavit is not detailed and does not reference the specific services rendered, and therefore is invalid because there is no proof that they are reasonable. At trial, Husband stated that he wanted the opportunity to "rebut . . . or respond to" the affidavit. Counsel for Wife stated that she would supply a detailed affidavit under seal. The Trial Court then indicated that it may need to conduct an *in camera* hearing to determine the reasonableness of the fees. There is nothing further in the record to indicate that Husband pursued such a hearing.

When considering the relevant factors set forth in Tenn. Code Ann. § 36-5-121(i), as well as the property award, we cannot conclude that the facts preponderate against the award of $20,000 to Wife as alimony in solido. We, therefore, reject both Husband's and Wife's challenges to that award.

---

[9] Husband argues that Wife is entitled to no alimony whatsoever. He does not argue that another type of alimony would be more appropriate, such as transitional alimony. Because we conclude that some type of alimony is appropriate, and because Husband does not argue that some other form of alimony would be more appropriate, we affirm the Trial Court's decision to award alimony in futuro.

**Conclusion**

The judgment of the Trial Court awarding Wife $30,000 as her share of the net farm income is modified to be instead an award of $2,184. In addition, Wife's award of alimony in futuro is modified to be $400 per month. This alimony modification is to take effect sixty days from the date our judgment is entered. In all other respects, the judgment of the Trial Court is affirmed. This case is remanded to the Trial Court for collection of the costs below. Costs on appeal are taxed one-half to the Appellant, Alvin Michael Antrican, and his surety, and one-half to the Appellee, Deborah Southern Antrican, for which execution may issue, if necessary.

_____
D. MICHAEL SWINEY, JUDGE